Reed, P. J.,
delivered the opinion of the court.
It is contended that the proceeding was illegal and unwarranted ; that no notice was given plaintiff to appear and show cause,—no opportunity for him to assert and establish title to the property. The course pursued does seem summary and arbitrary, purely ex parte, based upon the affidavit of the mortgagee alone, and an order made for the delivery of the designated property within forty-eight hours, regardless of how it came into his possession or his right to retain his possession. But those questions are not before this court for review. The estate of Hagar was in process of administration. The assets of the estate were in the hands and control of the court. Application had been made and leave obtained to borrow the money and secure it by chattel mortgage. It was the duty of the court to see that the assets of the estate were not dissipated or improperly disposed of. How it should have been exercised is another question. As far as gleaned from the record, when plaintiff was brought before the court, there was no attempt at justification. As far as appears, the only defense was the interposition of the motion on a question foreign to the proceeding for contempt, where the duty imposed was to purge and exonerate himself from the charge of contempt. This might have been done by showing that the property was not under his control or in his possession, and had not been after the execution of the mortgage—in the nature of a disclaimer; or he might have *14 justified, and showed a right' superior, to that of the mortgagee. Failing to do either, his course seems to have been contumacious and defiant, and to have warranted the course pursued by the court. We do not determine whether or not the court could legally make the order to turn over the property.
The law in regard to contempt of court is probably about as well defined as other branches of jurisprudence, yet in each case it is greatly controlled by the facts and circumstances of the particular case. Section 3565, Gen. Stats., is as follows: “If any executor or administrator, or other person interested in the estate, shall state upon oath to any court that he believes that any person has in his possession, or has concealed, or embezzled, any goods, chattels, moneys or effects, books of accounts, papers or any evidences of debt whatever, or titles to land belonging to any deceased person, the court shall require such person to appear before it, by citation, and may examine him on oath touching the same, •and if such person shall refuse to answer such interrogatories as may be propounded to him by the court or person interested as aforesaid, or shall refuse to deliver up such property or effects as aforesaid, upon requisition being made for that purpose, by an order of the said county court, such court may commit such person to jail until he shall comply with the order of the court therein.”
By the statute it appears that before making an order to turn over the property, the court shall cite the party before it and examine the party under oath, etc. This clause could only be operative against the charge of concealment or embezzlement or secretly remaining in the possession, which was not this case. There was no statement of belief making the inquisition necessary. As stated above, when served with the notice to deliver the property within forty-eight hours, he had that time in which to appear and show why he should not do it. The arrest without citation may have been irregular. It was summary, but wás certainly within the general and inherent power of the court regardless of the *15 statute; but before the judgment and order of commitment, a trial was had of some sort, in which plaintiff put in his testimony and made his defense; and, after such defense, the court, upon the facts, found him guilty of contempt. Counsel have not given us the testimony nor an abstract of it. The presumption is that it clearly established a flagrant contempt. Such having been the case, under section 3565, supra, it was the duty of the court to commit the plaintiff until he complied with its orders.
' The county courts of this state are superior courts of general jurisdiction, and without the statutory provision the judge would have the same power to punish for contempt that pertains to the highest tribunal. See Martin v. Force, 3 Colo. 199; Gomer v. Chaffe, 5 Colo. 383; Hughes v. Cummings, 7 Colo. 138; Hughes v. McCoy, 11 Colo. 591. The latter case is almost a counterpart of the one under consideration. Suit was brought by a private person against the county judge for damages alleged to have been caused by his judicial acts. The supreme court said: “ In such determination the judge misinterpreted the law, and the order made and entered by him in the premises was unwarranted.” The court further said: “As to whether the judge’s acts, under the said provisions of our code, were simply erroneous or were in excess of his jurisdiction, we need not and, therefore, do not ■determine. It is evident that he was acting as judge in the premises, and by virtue of the statute mentioned, was so acting in a subject-matter of which he had jurisdiction. According to the weight of- authority, the judge so acting is not liable to a party aggrieved thereby, even if the acts so done were in excess of his jurisdiction, as excess of jurisdiction is distinguished from entire want thereof. * * * It has been determined by this court that our county courts are courts of superior or general authority.” “ A court with general jurisdiction is not an inferior court because an appeal may be taken from its decisions to a higher court.” Newell on Mal. Pros., sec. 50. And see Hawes on Jur., sec. 258; Harvey v. Tyler, 2 Wall. 328. County courts of the state of *16 Illinois are not invested with the same extended jurisdiction as our county courts, but were by statute invested with common law jurisdiction. In relation to them, the supreme court said, in Anderson v. Gray, 134 Ill. 550: “ County courts, in this state, in the exercise of common law jurisdiction which has been conferred upon them by statute, are entitled to the same presumption in favor of their jurisdiction as circuit courts. They are courts of record and have the same power to pass upon their own jurisdiction and to exercise it without setting forth in their proceedings the facts upon which they determine their jurisdiction. These characteristics distinguish them from courts of inferior jurisdiction, in which jurisdiction, in every case, must affirmatively appear.”
It may be as well to say, in passing, that the fact that the plaintiff was taken by writ of habeas corpus before a judge of the district court, and discharged, adds nothing to the supposed cause of action. The authority of the district court to review proceedings for contempt in another tribunal of general jurisdiction is very questionable, but we are not called upon to decide such question of jurisdiction and will not decide or discuss it; but it must be borne in mind that th'e district court or judge did not review the case by virtue o£ an appellate jurisdiction, but reviewed the acts of the county court upon an application for habeas corpus, reversed the judgment and discharged the plaintiff. Further comment is unnecessary, when it is considered that both are superior courts of general jurisdiction.
From the earliest organization of modern courts in England to the present time, the law has been that judges of superior courts could not be made liable in suits for damages brought by private persons for official acts as judge, even when the acts complained of exceeded his jurisdiction. The English books announce the rule from the time of Edward III., A. D. 1354, down to the present time. See 1 Rolle Abr. 92, 1431; Baggs’ Case, 11 Coke, 93b, 1616; the last leading ease I have found being Scott v. Stansfield, L. R. 3 Exch. 220. Such has been declared the rule of law in the United States *17 from the earliest adjudications to the present time. The earliest leading case was that of Yates v. Chancellor Lansing, 4 Johns. 414; 5 Johns. 282; 9 Johns. 396. The case was three times in the court of errors and appeals. The chancellor committed the lawyer for an alleged contempt and he was released by the supreme court upon habeas corpus. The chancellor again committed him for the same contempt. The statute of that state allowed a person $1,250 damages who was, after a discharge on habeas corpus, a second time committed for the same offense. The lawyer brought suit for damages under the statute. Yates v. Lansing, 5 Johns. 282. Chief Justice Kent, afterwards chancellor, delivered an elaborate and exhaustive opinion, holding that the action would not lie. He said: “ Every court judges exclusively for itself of its own contempts; no other court, and much less a single judge out of court, can undertake to judge on the question. The plaintiff was recommitted, to use the language of the order, for ‘contempt and malpractice;’ and whether the court of chancery was right or wrong in considering that the plaintiff’s conduct amounted to a contempt, and whether it took the proper steps to ascertain the contempt, is perfectly immaterial as to the point of jurisdiction. It had authority to punish contempts. It must judge what are contempts. * * * Judicial exercise of power is imposed upon the courts. They must decide and act according to their judgment, and therefore the law will protect them. The chancellor, in the case of the plaintiff, was hound in duty to imprison and reimprison him, if he considered his conduct as amounting to a contempt of his court. The obligations of his office left him no volition. He was as much bound to punish a contempt committed in his court, as he was bound in any other case to exercise his power. He may possibly have erred in judgment, in calling an act a contempt which did not amount to one, and in regarding a discharge as null, when it was binding. This court may have erred in the same way; still it was but error of judgment, for which neither the chancellor, nor the judges of this court, are or can he responsible in a *18 civil suit.” And concludes as follows: “ Whenever we subject the established courts of the land to the degradation of private prosecution, we subdue their independence, and destroy their authority. Instead of being venerable before the public, they become contemptible; and we thereby embolden the licentious to trample upon everything sacred in society, and to overturn those'institutions which have hitherto been deemed the best guardians of civil liberty.” The leading case in the United States supreme court is Bradley v. Fisher, 13 Wall. 355, opinion by Mr. Justice Field, in which he carefully reviewed the whole question. Fisher had been disbarred by the criminal court of the District of Columbia, without notice or an order to show cause, or an opportunity to defend. The court held that the disbarring of the lawyer was an act exceeding the jurisdiction of the court, but that the act, being judicial, the judge was not liable in a suit, although the complaint alleged that the judge acted “ maliciously and corruptly,” and concludes that, except in cases where there was clearly no jurisdiction over the subject-matter, a judge is not liable. Lange v. Benedict, 73 N. Y. 12, is considered a leading case. Benedict, United States district judge, adjudged an unwarranted sentence upon a conviction before him. The party was released upon habeas corpus, was again brought before the court and resenteneed. to imprisonment, and brought an action against the judge for damages. In a very elaborate and able opinion by Folger, Judge, it is said: “ Where jurisdiction over the subject is vested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other involved in the case; although upon the correctness of his determination in those particulars, the validity of his judgment may depend. For such an act, a person acting as judge therein is not liable to a civil or criminal action. The power to decide protects, though the decision be erroneous.” And see Cooley on Torts, sec. 419; Grove v. Van Duyn, 44 N. J. Law, 654. The law in this state appears to *19 have been settled in the able and carefully considered opinion in Hughes v. McCoy, supra, and appears to. be conclusive of this case.
It is clear upon the authorities that no action for damages could be maintained against Judge Wright. Although a great many suits of the same character have been brought in different courts, I find no instance where a recovery was allowed.
The suit against the judge not being maintainable, the suit against Esther M. and S. B. Austin, who were joined as defendants, and who made the affidavits upon which the proceedings were instituted, must also fail. The other defendants were sureties upon the judge’s official bond. It is contended that plaintiff in error could not in any case maintain an action upon the bond, that it must be brought by the people; also that if the action could be maintained against the judge, it could not be against his sureties. In our view of the case, it is not necessary to determine these questions. The complaint stated, as shown, no cause of action. The judgment sustaining the demurrer was correct and must be affirmed.

Affirmed.