## No. 11,660.

### Pomeranz *v.* Class, et al.

Decided July 5, 1927.   Rehearing denied July 22, 1927.

Action for damages for false imprisonment. Judgment of dismissal.

### *Affirmed in Part.*

### *Reversed in Part.*

1.  False Imprisonment—*Liability*—*Judicial and Ministerial Officers.* One who procures a void judgment or order may be liable in a civil action for false imprisonment thereunder, while the ministerial officer who serves the process and the judicial officer granting the order may be immune.

2.  *Judges.* It is the general doctrine that judges of courts of general jurisdiction are not liable in civil actions for their judicial acts, even when such acts are in excess of their jurisdiction.

3.  *Jurisdiction.* The term "jurisdiction" as used in cases of false imprisonment or false arrest, includes not merely jurisdiction of the general subject matter of the general class of cases, but jurisdiction of the person imprisoned and jurisdiction to enter the particular judgment in the particular case.

4.  Contempt—*Jurisdiction.* A judgment for contempt of court is as absolutely void if there was no jurisdiction of the person against whom it was pronounced, as it would be if the judge imposing the sentence had no jurisdiction whatever of the subject matter of contempt.

5.  COURTS—*Jurisdiction—Void Judgment.* The absence of either element of general jurisdiction of the subject matter or person makes void a judgment of a judicial officer.

6.  CONTEMPT—*Receivers.* A judgment of contempt entered without affidavit, notice or hearing, for noncompliance with a court order directing delivery of property to a receiver, held void for want of jurisdiction.

7.  FALSE IMPRISONMENT—*Attorney—Receiver—Liability.* A receiver and his attorney held liable for damages for procuring an illegal arrest and imprisonment.

8.  ATTORNEY AND CLIENT—*Evidence—Contempt.* An attorney is presumed to know the law applicable to contempt proceedings.

9.  FALSE IMPRISONMENT—*Judges.* A judge granting a void order adjudging a person guilty of contempt—in the absence of conclusive evidence to the contrary—is presumed to be immune from civil liability for damages for false imprisonment under the order.

10. *Liability.* One who is the legal cause of an unlawful arrest or detention because he commands or instigates another to do the wrong, or ratifies the same, is liable therefor.

11. *Service of Process—Liability of Officer.* A sheriff taking a person into custody upon process regular upon its face, although issued on a void order, is not liable for damages for false imprisonment therefor.

*Error to the District Court of Prowers County, Hon. A. F. Hollenbeck, Judge.*

Messrs. GORDON & GORDON, for plaintiff in error.

Mr. GRANBY HILLYER, for defendant in error.

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS is an action for actual and exemplary damages by the plaintiff Pomeranz against George W. Beck, receiver of the National Beet Harvester Company, Harry

S. Class, his attorney, and L. H. Miller, sheriff of Adams county, for false imprisonment. Upon the trial to a jury of the issues of fact raised by the three separate traversing answers of the defendants, the court, at the close of plaintiff's evidence, sustained defendants' motion for nonsuit and rendered judgment of dismissal of the case at plaintiff's costs, which he here asks to have set aside. To a better understanding of the governing principles of the law, the material facts out of which this controversy arose are summarized. In the district court of Adams county, Colorado, an action was pending entitled: D. L. Daron, plaintiff v. The National Beet Harvester Company, defendant, in which George W. Beck was appointed as receiver to take possession of the property and affairs of the Harvester Company during the pendency of the action. Defendant Beck as such receiver, by defendant Class as his attorney, filed in the receivership proceeding a petition verified by the receiver which, in substance, alleges that the plaintiff Pomeranz was doing business in Lamar, Colorado, and claimed to be the owner of certain beet pullers and parts under a purchase thereof from the sheriff of Prowers county, Colorado, for taxes assessed and levied against the Arkansas Valley Supply Company, but that these pullers are claimed to be the property of the Beet Harvester Company. The petition asked for, and the court January 15, 1923, made, an order directing Pomeranz to deliver the pullers to the receiver or show cause on or before February 5, 1923, why the order was not complied with. The plaintiff herein was not a party to the Adams county suit at any time, nor was he ever served with any process therein, had never been in Adams county, and the first knowledge he had of this action was gained by the receipt by him through the mail on February 5, 1923, late in the afternoon, of a copy of a certain order entered by Judge Johnson in the receivership proceeding on January 15, 1923. This order, after reciting the petition of Beck as receiver of the Harvester Company asking for the order, commanded

Pomeranz to turn over to the receiver all of the beet pullers and parts and property held by him on account of the purchase at a tax sale of the sheriff or treasurer of Prowers county, or from any other source, or to show cause before the court on or before February 5, why the order should not be fully and completely complied with. The complaint alleges, and there is no denial by defendants, that this order was not received by the plaintiff through the mail until late in the afternoon of February 5, the day on which he was ordered to show cause. Even had Pomeranz desired to do so, it was impossible to comply, as Lamar is 200 miles or more distant from Brighton, the county seat of Adams county. After plaintiff received this order he consulted counsel who informed the judge of the district court and Class, attorney for the receiver, that it was the judgment of counsel that there was no power or authority in the court in such proceeding to enter such an order to obtain the beet pullers. In letters and by conversation plaintiff's attorney called to the attention of the defendants' attorney, as well as the court, that the Adams county court did not have jurisdiction of this property or of the person of the plaintiff, who was a stranger to the receivership proceedings, but that a separate action to accomplish the purpose in hand was essential and cited authorities upon which reliance was had. Notwithstanding the foregoing the complaint alleges, and it appears in testimony, that on May 9, 1923, an order was prepared by defendant Class, who obtained the approval thereof and the signature thereto of the district judge, Johnson, which recites the foregoing order sent by mail to the plaintiff at Lamar, and further recites that plaintiff had not complied with the order in any respect and that he had time and sufficient notice thereof, and, therefore, finds and adjudges plaintiff to be in contempt of court by reason of such disobedience, and concludes with a direction to the clerk of the Adams county district court to issue a writ of attachment commanding the sheriff of the county to

take into custody the said plaintiff Pomeranz, and that he be confined in the common jail of Adams county for and during and until such time as he shall comply with the preliminary or first order on plaintiff for the delivery of the beet pullers to the receiver. In this connection the defendant Class prepared for the clerk of the district court what is called a writ of attachment which is set out in this complaint running in the name of the people of the state of Colorado to the said sheriff and to all sheriffs, constables, etc., commanding them and each of them to take the body of plaintiff Pomeranz and keep him safely in the county jail of Adams county until such time as he will obey that certain order of the court above mentioned wherein plaintiff Pomeranz was adjudged in contempt of the court for a failure and refusal to turn over to the defendant Beck as receiver the beet pullers. This so-called writ of attachment was signed by the clerk of the court under the official seal. The defendant Miller, sheriff of the county to whom this writ of attachment was delivered by the defendant Class as the receiver's attorney, went to plaintiff's home at Lamar where he was at work; he refused to permit plaintiff to give bail and took him from Lamar to Brighton, Colorado, and confined him in the county jail of that county with other prisoners until the morning of the 14th of May, for three days, whereupon plaintiff put up a cash bond of $500 and was released to appear at a later date. At the time the sheriff arrested Pomeranz he read to him the order of May 9 and exhibited in connection therewith the writ of attachment. Before the sheriff removed Pomeranz from his home at Lamar to Brighton he was informed by the plaintiff's attorneys that Pomeranz had never been in Adams county and that no charges or complaint had ever been made against him for contempt of court and that he had never been before the court in person or otherwise; had never been a party to any proceeding there and that the warrant for arrest and commitment to jail, such as he, the sheriff, had in his possession, was absolutely

illegal and that he had no right to arrest or take under his control plaintiff Pomeranz and that he would be held responsible if he took him to Brighton. Nevertheless, the sheriff, on May 11, took the plaintiff from his home at Lamar to Brighton, the county seat of Adams county, and there lodged him in the jail of the county and, as stated, he was not released therefrom until May 14, 1923, three days thereafter, under an order of the court made, upon the filing by Pomeranz of a cash bond in the sum of $500, conditioned that he appear in the district court at Brighton on May 19. No affidavit was filed in the court charging Pomeranz with contempt of court and the order of commitment to the county jail was made and entered wholly without an affidavit, or a verified complaint, as a basis therefor, and without a hearing, or any opportunity on the part of the plaintiff to be heard upon the charge. Monday, May 21, Pomeranz filed in the Supreme Court an application for a writ of prohibition to restrain the district court from further proceeding in this contempt matter upon the ground that it was without jurisdiction to do so. Before filing this petition plaintiff's attorney called upon the defendant Class and again told him that Pomeranz had been arrested without any right, that no complaint had been filed against him for contempt and that the district court of Adams county had no jurisdiction, and that further proceedings should be discontinued since the plaintiff had already been greatly damaged and injured. Class answered that he thought they were doing right and if the plaintiff had any recourse to proceed as he saw fit. To this petition for a writ of prohibition the respondents there, who are defendants in this action, filed their answer in the Supreme Court in which, among other things, defendant Beck said that he was thoroughly conversant with the history of the litigation and knew the facts stated therein. The writ of prohibition was granted by the Supreme Court, and on final hearing the district court was prohibited from further proceeding against plaintiff Pom-

eranz on the ground that it was without jurisdiction in the premises. *People, ex rel. Pomeranz v. District Court,* 74 Colo. 58, 218 Pac. 742. We held in this case that the district court was without authority to make the preliminary order of May 9, and that Pomeranz was under no obligation to obey it, and that the receiver could get possession of the property only by a suit against Pomeranz to recover it, or by making him a party to the original suit and having the receivership extended to the property. We also said that the court had no jurisdiction to order the return of the property and that it exceeded its jurisdiction in attempting thus to try title. What we further said in the opinion, which is particularly pertinent and applicable here, was: "The court's action in adjudging the relator guilty of contempt of court was without jurisdiction," not merely in excess of its jurisdiction; and that this was so because, among other things, judgment for contempt was entered without the formality of an affidavit, and without a hearing, or an opportunity of a hearing being afforded to Pomeranz. The record shows that the trial court dismissed this action for false imprisonment upon the sole ground that the order of the district court of Adams county of May 9, 1923, which directed that Pomeranz, if he. failed to obey the previous order of the court to turn over the beet pullers, be confined in the county jail until he does so, was a complete and full justification to the defendant Miller as sheriff for the arrest and imprisonment of the plaintiff on May 11, 1923, and also was a full justification to the defendants Beck and his attorney Class.

1. It is proper here to state that this is not an action against the judge of a court of general jurisdiction by one who claims damages for false imprisonment under a void order of his court. It is an action against one of the parties to a pending action, and his attorney therein, and the sheriff and ministerial officer who served the process upon the plaintiff under which he was arrested and imprisoned by an order of a court of general jurisdiction.

One who procures a void judgment or order may, however, be liable in a civil action to one for false imprisonment thereunder while the ministerial officer who serves the process and commits the injured party to a jail where he suffers imprisonment may not be liable, and the judicial officer who granted the order may also be immune. *Bryan v. Congdon,* 86 Fed. Rep. 221; 25 C. J. p. 512; *Cody v. Adams,* 7 Gray (Mass.) 59; *Strozzi v. Wines,* 24 Nev. 389, 55 Pac. 828, 57 Pac. 832; *Fkumoto v. Marsh,* 130 Cal. 66, 62 Pac. 303, 80 Am. St. Rep. 73; *Harkness v. Hyde,* 31 Idaho, 784, 176 Pac. 885; *Johnson v. Von Kettler,* 66 Ill. 63; *Taylor v. Taylor,* 79 Colo. 487, 247 Pac. 174; *Rammage v. Kendall,* 168 Ky. 26, 181 S. W. 631, L. R. A. 1916 C, 1295; 12 Am. & Eng. Enc. of Law (2d Ed.) 761; *De Courcey v. Cox,* 94 Cal. 665, 30 Pac. 95; *Rutherford v. Holmes,* 66 N. Y. 368.

We think upon the record before us that the judgment of the district court was manifestly erroneous and must be set aside in its entirety, as to the receiver and his attorney, but that the judgment is right as to the sheriff. The general doctrine is that judges of courts of record of superior or general jurisdiction, and that is as far as we are required to go in this case, though the trend of modern authority extends the immunity to courts of every grade, are not liable in civil actions for their judicial acts, even when such acts are in excess of their jurisdiction and are alleged to have been done maliciously or corruptly. A distinction, however, as to the liability even of such judges, is made between acts done by them in excess of their jurisdiction, and acts done by them in the clear absence of all jurisdiction over the subject matter or the person. Nowhere has this doctrine been more clearly stated than in the leading case of *Bradley v. Fisher,* opinion by Mr. Justice Field, reported in 13 Wall. 335, 20 L. Ed. 646. It is upon the doctrine of this case and other cases, both in this country and in England of like import, that the defendants rely in their effort to uphold this judgment. Many authorities are

collated in the Bradley case and many others, more or less applicable to the present controversy, are collected in a note to *Landseidel v. Culeman,* 13 A. L. R. 1339. The following Colorado cases are more or less in point: *Hughes v. Cummings,* 7 Colo. 138, 2 Pac. 889; *Hughes v. McCoy,* 11 Colo. 591, 19 Pac. 674; *Casserleigh v. Malone,* 50 Colo. 597, 115 Pac. 520; *Terry v. Wright,* 9 Colo. App. 11, 47 Pac. 905.

The term jurisdiction, as used in cases relating to false arrest or false imprisonment, includes not merely jurisdiction of the general subject matter of the general class of cases to which the particular case belongs, but jurisdiction of the person imprisoned, and to enter the particular judgment in the particular case. A judgment for contempt of court, such as is involved here, is as absolutely void, if there was no jurisdiction of the person against whom it was pronounced, as it would be if the court or judge imposing the sentence had no jurisdiction whatever of the subject matter of contempt; and while it is true that in most of the cases the general statement is made that where a court has jurisdiction of the subject matter of the suit, any decision therein, however unjust it may be and however irregular the proceedings leading up to the judgment may have been, do not render liable in a civil action the judge of the court who gave the judgment. But it will be found, upon an examination of the cases, that entire lack of jurisdiction of the person is just as fatal to the judgment as entire lack of jurisdiction of the subject matter. This was clearly brought out by Mr. Justice Field in the Bradley-Fisher case, supra, where he says, page 354: "And, except where matters occurring in open court, in presence of the judges, constitute the grounds of its action, the power of the court should never be exercised without notice to the offending party of the grounds of complaint against him, and affording him ample opportunity of explanation and defense. This is a rule of natural justice, and is as applicable to cases where a proceeding is taken to reach the

right of an attorney to practice his profession as it is when the proceeding is taken to reach his real or personal property." And while in the Bradley case Mr. Justice Field said that the criminal court of the District of Columbia erred in not citing the plaintiff before making the order striking his name from the roll of attorneys to show cause why such order should not be made, and in not affording him an opportunity for explanation or defense or apology, he said that the erroneous manner in which its jurisdiction was exercised could not be taken advantage of by the attorney because his contemptuous conduct,—threatening, in the court room itself, personal chastisement of the judge for his rulings in the case on trial,—of which he was adjudged guilty, and for which his name was stricken from the roll of attorneys, occurred in the presence of the court itself and was a matter which the judge saw and heard and, therefore, there was no necessity for, or giving the offender an opportunity for, explanation because the offense was committed under the eye and in the immediate presence of the court during its session, and lay in its own bosom, and could not be contradicted. In the celebrated case of *Kilbourn v. Thompson,* 103 U. S. 168, 20 L. Ed. 377, in one of the great opinions of Mr. Justice Miller, it was held that the order of the House of Representatives of the National Congress, declaring Kilbourn guilty of a contempt of its authority, and ordering his imprisonment by the sergeant at arms is void—the subject matter not being within its jurisdiction—and the order affords the house officer Thompson no protection in his civil action by Kilbourn against him for false imprisonment. That decision is full authority for our conclusion here. In the Kilbourn case the House had not jurisdiction of the subject matter of contempt for which he was imprisoned. In the case now before us the district court of Adams county was wholly without jurisdiction of the person of Pomeranz when it entered an order adjudging him guilty of contempt without notice of, or a hearing upon, the charge for which he was adjudged guilty and imprisoned.

The order of the House was void because of absence of jurisdiction of the subject matter. The void commitment of Pomeranz is equally void because of lack of jurisdiction of his person. The absence of either element of general jurisdiction of the subject matter or person makes void a judgment of a judicial officer. Nowhere in any of the cases that we have examined, or to which our attention has been called, do we find any decision that any court may adjudge an offender guilty of contempt of court, not occurring in the immediate presence of the judge while holding court, unless the court had previously acquired jurisdiction of his person and had afforded him an opportunity to be heard.

The facts of the Terry case in our Court of Appeals, *supra*, are more nearly like the facts in the present case than any of those cited by counsel. It, however, is essentially different in its controlling facts and is not authority for the contention of the defendants. The holding there was, in accordance with the general doctrine, that judges of superior courts are not liable in damages for official acts at suit of private parties even though the acts complained of are in *excess* of their jurisdiction. The court also held in that case that there was no liability on the part of those who instituted that proceeding; but Terry, against whom the contempt judgment was pronounced, was at the time properly present in court. The contempt proceeding was instituted by the filing of a statutory affidavit setting forth the facts constituting the contempt, the appropriate writ was issued, served upon Terry, and under it he was brounght into court and required to answer, and did so, pleading the matters contained in his affidavit which he claimed showed that he was not guilty of contempt. Before the judgment and order of commitment were made there was a trial upon the issues thus joined in which Terry put in his testimony and made his defense, and after such defense the court upon the facts found him guilty and imposed sentence accordingly. The court said that the presump-

tion of law was, there being no testimony or an abstract of it in the record, that it clearly established a flagrant contempt. Of course, in such circumstances, there could be no liability of the judge who entered the order or of those who procured it, or of the ministerial officer who served process. The court there had not only jurisdiction of the subject matter, but jurisdiction of the defendant and the regular procedure applicable under our Code was followed.

Now let us apply the appropriate principles of law to the present case. From the foregoing statement it appears clearly that the plaintiff, until the time he was brought by the sheriff to Adams county and imprisoned in the county jail, had never been in that county. He was not a party to the receivership proceeding in which the order of the court of January 15, 1923, was made requiring him to deliver to the receiver the beet pullers, ownership of which was claimed by the receiver and by Pomeranz. Assuming, however, but only for the purpose of this case, that the court upon the affidavit of the receiver had the power to issue the rule upon Pomeranz to deliver the beet pullers ·to the receiver, or show cause why he did not comply with the order, as being within the court's jurisdiction, it does not necessarily follow that the judgment of contempt which the court pronounced against Pomeranz, for not doing so, was within its jurisdiction. If the court was entirely without all jurisdiction over the person of the plaintiff, because of a failure to comply with the pertinent, essential statutory steps, the contempt judgment was void, not because the court exceeded its jurisdiction, but void because of the absence of all jurisdiction of Pomeranz's person. The undisputed facts appearing in this record are, that after the court had issued its delivery order of January 15, 1923, and the same was sent through the mails to, and received by, Pomeranz at Lamar, without affidavit or verified complaint, setting forth noncompliance with the order, the court proceeded entirely without information

or notice to Pomeranz, and without giving him an opportunity to be heard and without hearing him, and on May 9 adjudged him guilty of contempt and ordered him committed to the county jail to remain there until he complied with the delivery order. Clearly there was an entire lack of all jurisdiction on the part of the court to pronounce the judgment of contempt. Section 357 of our ˅Code of Civil Procedure, which the court entirely ignored, provides that when a contempt is committed in the immediate view and presence of the court or judge at chambers it may be punished summarily. When, however, the alleged contempt is not so committed, an affidavit *shall* be presented to the court or judge of the facts constituting the contempt, or a statement of the facts by the referees or arbitrators. No such affidavit was filed by any one. For that reason alone the judge was entirely lacking in jurisdiction to adjudge the plaintiff guilty. Moreover when such an affidavit has been filed and the jurisdiction of the court thus invoked, if a warrant of attachment is issued pursuant thereto, as may be done, the court or judge shall direct, by an endorsement on the warrant, that the person charged may be let to bail for his appearance in a specified amount. Code, sections 358, 359. Upon the execution of such a warrant the sheriff shall keep the person in custody and bring him before the court or judge, and the officer, if he executes the writ, is authorized to detain such person until he has an opportunity to give bond and be admitted to bail. Section 363 provides that the person arrested must be brought before the court or judge who shall proceed to investigate the charge and hear any answer which the person arrested may make and examine witnesses for or against him. There was no attempt to comply with this section. On the contrary, without any showing by affidavit, or otherwise, that Pomeranz had failed to comply with the order of January 15 for delivery of the beet pullers, the judge of the court May 9 following, in an order prepared by the receiver's counsel, summarily ad-

judged Pomeranz guilty of contempt and ordered him confined in jail until he made compliance with the invalid order. These facts make inapplicable all the decisions relied upon by the defendants Beck and Class as justification of the judgment below, so far as concerns them.

2. It does not follow, as we have already said, that those who procure such illegal arrest or imprisonment may not be liable. They are liable here. Beck, the receiver, in an affidavit filed in the district court, purporting to initiate the contempt proceeding, recites that he is familiar with the history of this controversy and knows the facts in the case. His attorney is presumed to know the law and the procedure applicable in contempt cases. They were the procuring cause of the void order of the court adjudging Pomeranz guilty of contempt, when they knew, or are presumed to know, that no affidavit or verified complaint charging him with contempt had been filed in the court; that no notice was given to Pomeranz, and no hearing, or opportunity for a hearing, was afforded. It was at their instance that the clerk of the district court issued the so-called writ of attachment prepared by them which Miller, the sheriff, served and thereunder brought Pomeranz from his home in Lamar to Brighton and imprisoned him in the county jail for three days without an opportunity to give bail, and until a subsequent order of the district court was procured with that in view. In such a case it has been held that, even if the judge would not be liable in a civil action for his part in the case, those who are responsible for the procurement of such a judgment are liable. In the Terry case we said that inasmuch as in that case the defendant judge was not liable, the parties who procured the order were not liable; but that observation must be taken in connection with the facts of that case, which are that the court whose judgment was being reviewed had jurisdiction not only of the subject matter, but also of the person adjudged guilty of contempt, who appeared in the action and made his

defense. The other parties defendant there, of course, were not liable, because the acts of the county judge and his court were in all respects regular and full jurisdiction of the subject matter and person was in all respects present. Here, as we have already said, the plaintiff Pomeranz was not only not served with process in the contempt proceeding but he did not appear and there was no hearing, and there was no foundation whatever for the contempt judgment, and the district court was entirely without any jurisdiction of his person in adjudging him guilty of contempt. If for the purpose of this suit it be conceded that the district judge is not liable, and in the absence of conclusive evidence to the contrary the presumption would be that he is immune, we think the law is clear that even so, one who procures or causes process to be issued may be. See authorities supra, and 25 C. J. p. 484. So also, one who is the legal cause of an unlawful arrest or detention because he commands or instigates another to do the wrong, or ratifies the same, is liable. 25 C. J. p. 499 and cases cited. On this point the case of *Union Pac. R. Co. v. Dennis*, 73 Colo. 66, 213 Pac. 332, is pertinent. See also *Kettelbut v. Edwards*, 65 Colo. 506, 177 Pac. 961. This arrest was made for the benefit of the receiver. He made the affidavit for the first order, and said he was acquainted with the history of the case and he recognized and ratified the act of his attorney in the premises. We think both Beck and his attorney are liable.

3. The sheriff is not liable. The process which he served was regular on its face, or conversely stated, was not void on its face, and was issued by a judicial tribunal having general jurisdiction of the subject matter of the action or proceeding. The officer might rightly presume that notice had been given and hearing had been had before the judgment of contempt was rendered, unless, of course, the process on its face showed that they were not. In such a case the general rule is that a ministerial officer is protected in serving judicial process.

The reasons usually given are that the officer has no means of ascertaining whether the court or officer issuing the writ had jurisdiction, or whether the proceedings to obtain it were in conformity to law, and because he would be liable to the party in whose favor it issued in damages for neglecting or refusing to serve it. So also the speedy administration of justice requires that the mandates of all courts possessing judicial powers should be executed promptly and without hesitation by those to whom they are directed. To secure these ends it is necessary that the law should throw its protecting mantle around those executing such mandates and hold them harmless so long as they do only what they are commanded to do, without requiring them to determine whether it is rightly and properly commanded or not. *Peterson v. Merritt,* 25 Idaho 324, 137 Pac. 526. Able courts, however, have qualified this rule. *Tellefsen v. Fee,* 168 Mass. 188, 48 N. E. 562, 45 L. R. A. 481, 60 Amer. St. Rep. 379, is probably the best reasoned case which holds that when a court has no jurisdiction of the subject matter or of the parties, an officer who is informed of facts concerning the truth of which he can have no reasonable doubt, which show, as matter of law, that the court has no jurisdiction, proceeds at his peril in making an arrest in a civil process, although the want of jurisdiction does not appear on its face. Mr. Justice Knowlton dissented on the ground that though the ministerial officer is bound to know the law, for the facts he is not called upon to take the testimony of anybody in regard to anything outside of the statements contained in the process, nor even to act upon what he believes to be his own knowledge. The learned justice further said that it has been held that a ministerial officer may, if he chooses, act upon his own knowledge or information and actual facts which show that the court was without jurisdiction and refuse to serve the process. But he said that is different from requiring him at his peril to determine questions of fact. We think, therefore, that process in

this case which Miller served was not void on its face and, in the circumstances, he is not to be held liable. Errors are assigned to certain adverse rulings on offers of evidence by plaintiff, which rulings doubtless were made because of the court's theory that all of the defendants are immune. We perceive no valid objection to the offered evidence on the correct theory that Beck and Class are liable. So far as such evidence concerns them, the court, in event of a new trial, will permit its introduction.

The judgment is affirmed as to defendant Miller, the sheriff, and reversed as to the defendants Beck and Class. The costs of this review are to be taxed to the two latter. The cause is remanded to the district court with instructions to make its judgment conform to the foregoing and to reinstate the case. Further proceedings, if any, to be against Beck and Class only, and in harmony with the views expressed in the opinion.