**J. Minos SIMON, Plaintiff-Appellant,**

v.

**UNITED STATES of America, et al., Defendants,**

**James F. Neal, Defendant-Appellee.**

No. 82–3420.

United States Court of Appeals,
Fifth Circuit.

Aug. 12, 1983.

Rehearing Denied Sept. 29, 1983.

---

Raymond Morgan Allen, Clay Morgan Allen, Lafayette, La., for plaintiff-appellant.

Voorhies & Labbe, D. Mark Bienvenu, Lafayette, La., for defendant-appellee.

Before CLARK, Chief Judge, THORNBERRY and RANDALL, Circuit Judges.

THORNBERRY, Circuit Judge:

INTRODUCTION:

J. Minos Simon (Simon) appeals from the district court's grant of summary judgment to appellee James F. Neal (Neal). Concluding that the district court in granting Neal's motion failed to entertain the cause of action actually pleaded by Simon, we REVERSE and REMAND for proceedings not inconsistent with this opinion.

FACTS AND PROCEDURAL HISTORY:

Simon alleges that attorney Neal, while serving as defense counsel in a criminal case in federal court in Atlanta, Georgia, intentionally caused to issue a subpoena which incorrectly stated both his name and address.[1] The subpoena was issued on February 13, 1973, compelling Simon to appear as a defense witness in Atlanta on February 22, 1973. Because of the incorrect information on the subpoena, the federal marshals were unable to effect service on Simon. When on February 22nd Simon still had not been served, the U.S. Marshal's Office in Atlanta, at Neal's request, contacted its corresponding office in Shreveport, Louisiana for aid in obtaining service on Simon. The Shreveport office relayed the information to a Lafayette, Louisiana deputy U.S. marshal, who wrote out a subpoena ticket on February 23rd incorrectly directing Simon to appear at the Atlantan Hotel in Atlanta on the evening of Sunday, February 25, 1973.[2]

On that same day, February 23, 1973, attorney Neal incorrectly informed Judge Real, the presiding judge in the Atlanta criminal trial, that Simon had "just been served a few moments ago with the help of the F.B.I. and the marshals converging on him in the bayous of Louisiana." Apparently under the impression that Simon had been served and was avoiding compliance with the subpoena, Judge Real then and there issued a bench warrant for Simon's arrest.

Simon was eventually served with the subpoena ticket at his home in Lafayette on the afternoon of Sunday, February 25, 1973. The complaint alleges that when Simon informed the marshal effecting service that it was physically impossible for him to appear in Atlanta that evening, the marshal replied that it would be sufficient if Simon appeared the next day. Simon then sought to contact Judge Real, but was unable to reach him.

Simon was unable to depart for Atlanta the following morning, February 26th, due to a previously scheduled appearance in state court. It was only when state Judge Edmond Guidry contacted Judge Real's office to resolve the conflict in appearances that Simon learned that Judge Real had issued a bench warrant for his arrest. Simon left immediately to catch the next plane to Atlanta. Ten minutes after his departure, a deputy U.S. marshal arrived at Judge Guidry's court seeking to arrest Simon. Upon learning that he had already left for the airport, the marshal departed in hot pursuit, arriving just as Simon's plane was taking off. The marshal then phoned ahead to Atlanta to advise his colleague there that Simon would be arriving shortly.

Upon his arrival at the Atlanta airport at 9:35 p.m., Simon was met by two deputy U.S. marshals and an F.B.I. agent who promptly placed him under arrest. He was then delivered to the local authorities, who placed him in a holding cell at about 10:30 p.m. At 10:45 p.m. he was fingerprinted, deprived of his personal effects, and returned to his original cell. On February 27th, in the wee hours of the morning, he was placed in isolation and compelled to submit to a strip search.

He was brought before Judge Real early the next morning, accompanied by counsel. Simon explained to the judge that he was not avoiding service and had in fact at-

---

1. The subpoena was to be served on *Minor Simone;* 1403 *Pinbrook* Road; *Baton Rouge,* Louisiana. The subpoena should have been drafted to read: *J. Minos Simon,* 1408 *Pinhook* Road; *Lafayette,* Louisiana. The subpoena had thus been erroneously completed by one of Neal's associate lawyers. Due to this mistake (which Simon alleges to have been intentional rather than grossly negligent), the federal marshals in Baton Rouge were unable to make service on this unknown person at this non-existent Baton Rouge address.

2. In the prior appeal of this cause, we noted that it was doubtful that Simon could have been held in contempt for failing to respond to a subpoena ticket ordering him to appear at an uncertain hour at a hotel in Atlanta on a Sunday evening when court was not even in session. *Simon v. United States,* 644 F.2d 490, 495 (5th Cir.1981). Since the subpoena ticket was in actuality designed to afford Neal pretrial discovery, we concluded that it was not an authorized use of the subpoena process. *Id.* at 498 & n. 12.

tempted to respond to the subpoena ticket actually served on him. The judge then released Simon from custody, and vacated the bench warrant ordering his arrest. Upon returning to Louisiana, Simon was greeted by newspaper headlines announcing that he had been arrested in Georgia.

Simon subsequently filed a complaint in federal district court against Neal and the five federal officers involved in his arrest, alleging that they had conspired and misrepresented facts to procure his arrest, search, seizure and imprisonment without probable cause, in violation of his fourth, fifth, sixth, and fourteenth amendment rights. The district court granted summary judgment dismissing Simon's suit against the federal officers because the factual showing disclosed no irregular activity on their part. The district court dismissed the suit against Neal without prejudice on finding that Neal had such minimal contact with the forum state that the Louisiana long-arm statute[3] did not permit a federal court sitting in Louisiana to exercise *in personam* jurisdiction over him.

Neal then appealed to this Court. We concluded that because the federal officers merely executed a warrant valid on its face, Simon had failed to present a claim against them over which a federal court could exercise jurisdiction. *Simon v. United States,* 644 F.2d 490, 496 (5th Cir.1981). However, we also determined that under the Louisiana long-arm statute, the court could constitutionally exercise personal jurisdiction over Neal, and reversed the district court's holding as to him, remanding for further proceedings. *Id.* at 499.

The complaint was pursued on remand against Neal, and was based on his allegedly tortious acts under Louisiana law in wrongfully and maliciously influencing a trial judge to issue a bench warrant for Simon's arrest by misrepresenting that Simon was evading service. The district court granted Neal's motion for summary judgment, concluding that Neal's statements to the judge were defamatory, but that as an attorney Neal enjoyed absolute

immunity in a suit for defamation because his statements were made in the course of a judicial proceeding to obtain the testimony of a witness, and were related to the judicial proceeding. Simon appeals that decision to this Court.

ANALYSIS:

■ In considering whether to grant a motion for summary judgment, the district court must view the evidence in the light most favorable to the party resisting the motion. *Trevino v. Celanese Corp.,* 701 F.2d 397, 407 (5th Cir.1983). Our standard of review on appeal is the same. *Heller v. Namer,* 666 F.2d 905, 912 n. 14 (5th Cir. 1982); *Northwest Power Products, Inc. v. Omark Industries,* 576 F.2d 83, 85 (5th Cir. 1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1021, 59 L.Ed.2d 75 (1979).

In its ruling granting Neal's motion for summary judgment, the district court stated:

> Defendant argues that he enjoys immunity from claims for defamation which result from statements made by him as an attorney in a judicial proceeding.

> Plaintiff's cause of action is clearly included in the scope of a defamation action. . . .

> I conclude that the defendant has immunity for the statements he made because: (1) the statements complained of were made during the course of a judicial proceeding to obtain the testimony of a witness and were related to the judicial proceeding; (2) the statements were defamatory under plaintiff's allegation.

Neal argues on appeal that the court's conclusion that he enjoyed absolute immunity in a tort action for defamation in fact constituted a finding that Neal was immune in any action for defamation, false imprisonment, or any other action in tort. Careful analysis of the court's ruling reveals that there is absolutely no basis for this claim. The district court characterized Simon's cause of action solely as one for defamation, and then went on to find Neal

---

**3.** La.Rev.Stat.Ann. § 13:3201 (West 1968).

absolutely immune from liability in such an action.

In his original complaint, Simon alleged a cause of action for false arrest and false imprisonment.[4] Although the complaint alleges that Simon was falsely arrested and imprisoned as a result of Neal's *false and malicious representations* to Judge Real, it is not framed as an action for defamation. Similarly, in the prior appeal of this cause, we stated that "the damages alleged by the complainant are solely those resulting from Simon's allegedly wrongful arrest, search and imprisonment." *Simon,* 644 F.2d at 493.[5]

Following the dismissal of the action against the five federal officers by this Court, Simon pursued his claim against Neal in the form of an action for wrongful arrest and false imprisonment under Louisiana tort law. The record contains no amended or supplemental complaint limiting Simon's action to one for defamation.

■ On the prior appeal of this cause, we concluded that Simon's claim of a constitutional tort sufficiently stated a prima facie case of tortious injury for the purpose of deciding whether the district court could exercise long-arm jurisdiction over Neal. Our examination of applicable Louisiana law reveals that Simon has stated a valid claim in tort under the law of that state as well. *See, e.g., Fontenot v. Lavergne,* 365 So.2d 1168 (La.Ct.App.1978) (defendant who without malice made positive false identification of plaintiff as person for whom bail bond had issued, and for whom bench warrant was issued after he failed to appear in court, was liable for false arrest and imprisonment where defendant insisted the right man had been arrested and took no steps to verify his identity); *Jones v. Simonson,* 292 So.2d 251 (La.Ct.App.1974) (defendant who caused warrant to issue for plaintiff's arrest and failed to have it vacated after learning that plaintiff was not the person sought, was liable to plaintiff for damages). *See also Wells v. Johnston,* 52 La. 713, 27 So. 185 (La.1898) (setting out elements of false imprisonment). Neal's alleged actions in having an improperly identified subpoena issue against Simon, and then influencing Judge Real to issue a bench warrant for Simon's arrest when Neal knew full well that Simon had not ever been served, form a sufficient basis for a claim of wrongful arrest and false imprisonment under Louisiana law.

That Simon pleaded something more than a simple defamation action is evident from the facts presented in support of his claim. By intentionally or even negligently causing to issue a subpoena so defective that it could not be served, Neal most certainly was not making a defamatory statement. The subpoena is relevant only as a link in the chain of events leading to Simon's arrest and imprisonment. Similarly, although Neal's statement that the F.B.I. was converging on Simon in the bayous of Louisiana could be "included" within the scope of an action for defamation, Simon's complaint treats it as a wrongful act leading to his arrest and imprisonment.[6] The reputational damage claimed by Simon is that which resulted from his arrest, not

---

4. "Complainant alleges that said defendants, by their false and malicious representations to said Judge Manuel L. Real, induced him at some point during the day of February 26, 1973 [sic], to issue a warrant for the arrest of your complainant. It was as a result thereof that your complainant was arrested, searched and seized, as hereinaforesaid, and subjected to the ignominious treatment and personal humiliation hereinabove described."

5. *See also, Simon,* 644 F.2d at 494: "The sole damages claimed by Simon's complaint are those resulting from his allegedly wrongful arrest, search and imprisonment in Georgia as a result of the bench warrant issued in Georgia by a federal judge there sitting."; "The cause

of action alleged against defendant Neal is that he in conspiracy with various federal officers, caused Simon's unlawful arrest, search and detention without probable cause." *Id.* at 496.

6. Similarly, although a tort action for assault may be "included" in an action for battery, this does not authorize a court to ignore plaintiff's action for battery by recharacterizing it as one for assault. The tort of false arrest or false imprisonment is "included" in the tort of defamation only in the sense that facts giving rise to the former may in rare cases also support the latter. False arrest or false imprisonment, on the one hand, and defamation, on the other, are separate and distinct torts.

that resulting directly from the communication or publication of Neal's statement in court.

We are confronted here with a situation in which the court, for reasons best known to itself, has, over plaintiff's protestations, recharacterized his action *sua sponte*. Where a plaintiff in diversity pleads a cause of action recognized by the law of the forum state, he is at a minimum entitled to judicial consideration of that cause of action.

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only where everything in the record demonstrates the absence of any genuine issue of material fact. *Trevino*, 701 F.2d 407. Where, as here, a court simply declines to entertain the claim advanced by plaintiff, its determination that there exists no genuine issue of material fact under the theory of recovery it applies cannot be supposed to extend to facts material to the rejected claim. *Id.* The district court's determination that there exists no genuine issue of material fact in this case because Neal is absolutely immune in a tort action for defamation is quite irrelevant to the determination that there is no genuine issue of fact material to Simon's action for wrongful arrest and false imprisonment.

Since Simon's action was not one for defamation, we could only affirm the district court's grant of summary judgment by construing it as a determination that Neal enjoyed absolute immunity from suit for wrongful arrest or false imprisonment, where the arrest and imprisonment were in part occasioned by statements he made in a judicial proceeding. We have found no case in which a court has extended this immunity to a private defendant in such an action. Had the district court intended to reach so novel a result, it would have had to have deduced from applicable precedent both that the law provided such immunity, and that under these facts Neal could avail himself of it. The record does not reveal that the district court engaged in any such analysis. It would be inappropriate for us to do so here.

Accordingly, we REVERSE the district court's grant of the motion for summary judgment and REMAND for proceedings not inconsistent with this opinion.

The tort of false arrest or false imprisonment is derived historically from the action of trespass. A defendant who intentionally brings about plaintiff's unlawful restraint against his will, and with his knowledge, is liable for false arrest or false imprisonment. Plaintiff may recover damages for his loss of time, physical discomfort, resulting illness or injury, mental suffering, humiliation, harm to reputation, interruption of business, loss of the company of his family, and expenses incurred to vindicate himself. W. Prosser, Law of Torts 42–49 (4th ed. 1971).

Defamation, on the other hand, is an invasion of the plaintiff's interest in reputation and good name. A defamatory communication is one which tends to diminish the esteem, respect, or confidence in which plaintiff is held, or to excite adverse or unpleasant feelings against him. Prosser says, for example, that it is defamatory on its face to say that "plaintiff has attempted suicide, that he refuses to pay his just debts, that he is immoral or unchaste, or 'queer,' or has made improper advances to women, or is having 'wife trouble,' and is about to be divorced; that he is a coward, drunkard, a hypocrite, a liar, a scoundrel, a crook, a scandal-monger, an anarchist, a skunk, a bastard, a eunuch, or a rotten egg." W. Prosser, *supra,* at 740–41.

A defendant must intentionally communicate the defamatory material to a third party to be liable for defamation. A defamed plaintiff ordinarily seeks damages for injury to his reputation. W. Prosser, *supra* at 737–801.