**Elliott BOSSIN, Appellant,**

v.

**Preston TOWBER, Individually, Hirsch & Westheimer, P.C. and Bank One Texas, N.A., Appellees.**

**No. B14–93–00554–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 22, 1994.

Rehearing Overruled Feb. 16, 1995.

Richard Morrison, Houston, for appellant.

Donald B. McFall, Douglas C. Clark, Timothy T. Tunks, Houston, for appellees.

Before SEARS, LEE and BARRON, JJ.

## OPINION

SEARS, Justice.

This appeal is from a summary judgment in favor of defendants below, appellees Preston Towber ("Towber"), Hirsch & Westheimer, P.C. ("Hirsch"), and Bank One Texas,

N.A. (the "Bank"). Appellant, Elliott Bossin ("Bossin") sued appellees for damages claiming false imprisonment, abuse of process, and negligence. Bossin's claims arose when he was taken into custody pursuant to a writ of attachment issued after unsuccessful attempts to serve him with a subpoena to appear at trial. Raising eight points of error, Bossin appeals the granting of summary judgment against him as well as the denial of his motion for partial summary judgment. We affirm.

This lawsuit results from events which occurred in an adversary proceeding to revoke the bankruptcy discharge of the debtor, George R. Bolin ("Bolin").[1] The Bank was one of Bolin's creditors and employed Hirsch to represent it in the proceeding. Towber, who represented the Bank in this case, is an attorney employed by Hirsch. Bossin is Bolin's certified public accountant. Appellees contend Bossin's testimony about his knowledge of Bolin's affairs was material and necessary for trial.

During discovery, the Bank issued a subpoena duces tecum to Bossin requiring his appearance for the taking of his deposition and production of documents. During his deposition, Bossin disclosed that he may have failed to bring all of the documents responsive to the subpoena, but agreed to deliver any omitted documents to the Bank. Despite at least one subsequent request, Bossin failed to supply any additional documents. Shortly before trial, appellees obtained a second subpoena to compel Bossin's appearance at trial and the production of the additional documents needed for trial.

Harris County constables unsuccessfully attempted to serve Bossin several times. Trial of the adversary proceeding was scheduled to begin on September 19, 1991. When the case was called, Towber informed presiding Judge Manuel Leal that Bossin was not present, but was a key witness in possession of necessary documents. Towber informed the court that three constables were present and ready to substantiate that they had been unable to serve Bossin. Towber offered to read Bossin's deposition into the record at trial, "[o]r we could, I believe you have the authority, your honor, to send a marshal to get Mr. Bossin and bring him to Court."

Judge Leal asked to hear evidence about the efforts to obtain Bossin's appearance and the requested documents. Deputy Constable Britt testified that on the morning of September 16 she called Bossin's office and explained she needed to serve a subpoena. She was told Bossin was "unavailable at the time but he would be in and out of the office all day." When she attempted to serve Bossin that afternoon, she was told "he wasn't in and that he would be out the rest of the day." Deputy Constable Sofka testified that when he attempted to serve Bossin at his office in the early afternoon on September 17, Bossin's staff indicated Bossin "would not be in the rest of the day," but suggested the constable return at a later time when Sofka was assured Bossin would be available. When Sofka returned at the appointed time on September 18, he was told that Bossin had been in, but he unexpectedly left for a meeting. Deputy Constable Marcks attempted to serve Bossin at the address he mistakenly thought was Bossin's residence on the morning of September 19, the day of trial, but there was no answer.

After hearing the evidence and Towber's representations as to the Bank's diligence in attempting to obtain service and the importance of Bossin's presence at trial with the documents, Judge Leal stated:

> We'll go ahead and request the United States Marshal Service to go ahead and force compliance with the subpoena and the documents. ... I have no choice but to ask that the Marshal's service do assist on the, securing the appearance of Elliott Bossin.

Judge Leal then issued an order stating in relevant part:

> Ordered this 19th day of September, 1991, that the United States Marshall, pursuant to a Writ of Attachment, seize the person

---

1. The bankruptcy case is styled *In Re: George R. Bolin, Debtor,* Case No. 89–02481–H1–7 in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. The adver- sary proceeding is styled *Bank One Texas, N.A. v. George R. Bolin,* Adversary No. 90–0655, also pending in the United States Bankruptcy Court in Houston.

of Elliott Bossin for trial in this Court on Friday, September 20, 1991 at 9:30 a.m., and that he remain in Custody of said Court until dismissed.

Judge Leal had already determined that the proceedings would be continued until the following morning, when a motion for default judgment would first be considered.

Acting on the Order, a deputy U.S. Marshal took Bossin into custody, handcuffed him, and transported him to a jail cell at the federal courthouse, where he remained for about three hours. Judge Leal released Bossin when he promised to appear at trial and produce the requested documents. Contending there was no legal basis for the bankruptcy court's Order, Bossin filed suit against Towber, Hirsch and the Bank for false imprisonment, abuse of process, and negligence. Appellees removed the case to federal court, but the action was remanded back to state court. Bossin then moved for partial summary judgment on the claims of false imprisonment and negligence. Appellees responded and also filed their own motions for summary judgment on all of Bossin's claims. From the court's grant of summary judgment for appellees and denial of his motion for partial summary judgment, Bossin appeals in eight points of error.

### STANDARD OF REVIEW

■ The rules to be followed in reviewing a summary judgment are well established:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■ When both parties move for summary judgment, we must rule on all issues presented, including the propriety of the order overruling the losing party's motion for summary

judgment. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). As both parties were movants below, we must indulge all reasonable inferences and resolve all doubts in favor of the losing party. *University of Texas Health Science Center at Houston v. Big Train Carpet of El Campo, Inc.,* 739 S.W.2d 792, 792 (Tex.1987).

■ Defendants moving for summary judgment have the burden of showing as a matter of law that no material issue of fact exists for one or more of the essential elements of each of the plaintiff's causes of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). Summary judgment for the defendants disposing of the entire case is proper only if, as a matter of law, the plaintiff could not succeed upon any theories pled. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983). When the trial court's order granting summary judgment does not specify the grounds upon which it was granted, as here, appellant must show that each of the independent arguments alleged in the motion is insufficient to support the order. *Tilotta v. Goodall,* 752 S.W.2d 160, 161 (Tex. App.—Houston [1st Dist.] 1988, writ denied).

### FALSE IMPRISONMENT

■ In Bossin's first five points of error, he argues the trial court erred in granting appellees' motions for summary judgment and denying his motion for partial summary judgment on his false imprisonment claim. The essential elements for a claim of false imprisonment are: (1) willful detention; (2) without consent; and (3) without authority of law. *Sears, Roebuck & Co. v. Castillo,* 693 S.W.2d 374, 375 (Tex.1985). Generally, liability extends to anyone who directs, requests or participates in the detention. *Cronen v. Nix,* 611 S.W.2d 651, 653 (Tex.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.), *cert. denied,* 454 U.S. 833, 102 S.Ct. 132, 70 L.Ed.2d 112 (1981). As discussed more fully later in this opinion, liability for false imprisonment in this case is dependent on the nature and degree of Towber's participation in Bossin's detention.

■ Bossin's primary contention is that Judge Leal lacked authority to issue the

order commanding the marshal to take him into custody. He argues a federal court does not have authority to issue an order of attachment for a witness unless the witness has first been served with a subpoena and fails to obey. Bossin's argument is based upon the federal rules of procedure, which apply to bankruptcy cases. *See* FED. R.BANKR.P. 9016. Rule 45(e) states:

> **Contempt.** Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued.

FED.R.CIV.P. 45(e).

To support his argument, Bossin relies upon *United States v. Davenport,* 312 F.2d 303 (7th Cir.), *cert. denied,* 374 U.S. 841, 83 S.Ct. 1895, 10 L.Ed.2d 1061 (1963). There, the court recognized that before a body attachment can be issued against a witness, there must be strict compliance with the rules for service of process. *Id.* at 307. The court held there was insufficient evidence the witness in a criminal trial had been served with process, so arrest would have been improper. *Id.* at 306–07.

Bossin also cites cases from other jurisdictions to support his position that the attorney-appellees are liable to him for false imprisonment. The California Supreme Court decided that an affidavit based on "information and belief" was insufficient to confer jurisdiction on the court issuing an arrest order, making the order void. *Fkumoto v. Marsh,* 130 Cal. 66, 62 P. 303, 304 (1900). The court held that the party who sought the void order could not escape liability for false imprisonment. *Id.* The Washington Supreme Court held that "[a] person who causes the arrest of another in a civil proceeding must answer in damages, even though the arrest was in pursuance of an order of court, when the court issuing the order has exceeded its jurisdiction, or had no authority to do so." *Hamilton v. Pacific Drug Co.,* 78 Wash. 689, 139 P. 642, 644 (1914).

Appellees argue that the bankruptcy court had authority to issue the writ of attachment, relying on the rules of evidence, which also apply to bankruptcy proceedings, pursuant to bankruptcy rule 9017.[2] Rule 614(a) provides:

> The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross examine witnesses thus called.

FED.R.EVID. 614(a). Moreover, the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105. Appellees also rely on the All Writs Act, which provides:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a); *see also United States v. New York Tel. Co.,* 434 U.S. 159, 174, 98 S.Ct. 364, 373, 54 L.Ed.2d 376 (1977) (the power conferred by the Act extends under appropriate circumstances to non-parties in a position to frustrate the implementation of a court order or the proper administration of justice).

We agree with appellees that the question is whether the court had authority to issue the writ of attachment *under these circumstances.* Appellees rely upon two cases to support their position that, under such circumstances as these, issuance of an order for a writ of attachment is proper even without prior service of subpoena. The first case, *Barry v. United States ex rel. Cunningham,* 279 U.S. 597, 49 S.Ct. 452, 73 L.Ed. 867 (1929), involves the Senate, sitting in its capacity as a judicial tribunal. In *Barry,* the Court recognized that the usual procedure may be for an arrest warrant to issue after a subpoena has been disobeyed, but further observed:

> Undoubtedly also, a court has power in the exercise of a sound discretion to issue a

---

**2.** Appellees also initially argued that the bankruptcy court had authority to issue the writ because Bossin was in contempt for his alleged failure to comply with the earlier subpoena duces tecum at his deposition. We reject this argument for several reasons. First, there was no notice of contempt. In addition, appellees admit that no evidence was adduced at the hearing on lack of compliance with the deposition subpoena, and the court never made a finding of contempt.

warrant of arrest without a previous subpoena when there is good reason to believe that otherwise the witness will not be forthcoming.

*Barry,* 279 U.S. at 616, 49 S.Ct. at 456.

The second major case appellees rely upon is a criminal case, *United States v. Feingold,* 416 F.Supp. 627 (E.D.N.Y.1976). The court there found, based upon the rules of criminal procedure and 18 U.S.C. § 3149 (now 18 U.S.C. § 3144) that a court may order an arrest of a witness without prior issuance of a subpoena if: (1) the testimony of the person is material; and (2) it may become impracticable to secure his presence by subpoena. *Id.* at 628. Appellees urge that this same rationale should also apply to this proceeding, even though it is not a criminal case.

■ We do not find that the court exceeded its authority. Further, even if the court did exceed its authority, under the facts of this case, we hold that appellees are not accountable, as a matter of law, for Bossin's detention. Imposition of liability against an attorney in Texas under facts such as these presents a question of first impression. Courts in other jurisdictions take differing approaches in deciding under what circumstances an attorney should be held liable for false imprisonment when his actions are undertaken in the representation of a client. *See generally* J. Kraut, Annotation, *Liability of Attorney Acting for Client, for False Imprisonment or Malicious Prosecution of Third Party,* 27 A.L.R.3d 1117 (1969 & Supp. 1994). Courts in some jurisdictions base the determination of an attorney's liability on whether he was the "procuring cause of an illegal detention." *See, e.g., Pomeranz v. Class,* 82 Colo. 173, 257 P. 1086, 1091–92 (1927) (attorney and receiver found liable where they were the *procuring* cause of void contempt order when attorney knew or was presumed to know the law). Some courts look to the degree of participation by the attorney in deciding whether liability may be imposed. *See, e.g., Otto v. Levy,* 244 A.D. 349, 279 N.Y.S. 462, 466–67 (1935) (attorney found liable where he requested and was the active and procuring cause of invalid attachment order). Courts in other jurisdictions hold that an attorney is immune unless he acts with malice, in bad faith or without probable cause. *See, e.g., Hill v. Hill,* 388 So.2d 625 (Fla.Dist.Ct.App.1980) (lawyer had probable cause for instituting competency proceeding against client's wife); *Sell v. Thompson & Coates, Ltd.,* 163 Wis.2d 765, 472 N.W.2d 834, 838 (App.1991) (attorney immune where propriety of writ of body attachment was "fairly debatable" and attorney acted in good faith and without ulterior motive); *see also Simon v. United States,* 711 F.2d 740, 744 (5th Cir.1983) (attorney's knowing misrepresentation that plaintiff had been served with subpoena to influence judge to issue bench warrant for arrest forms sufficient basis for claim of false imprisonment under Louisiana law).

■ In Texas, want of probable cause and malice are not elements of a cause of action for false imprisonment, but instead are essential elements of a claim for malicious prosecution. *Dallas Jt. Stock Land Bank of Dallas v. Britton,* 134 Tex. 529, 135 S.W.2d 981, 984 (1940). Bossin did not bring a cause of action for malicious prosecution. Thus, Towber's malice, if any, and whether he acted with probable cause, are not at issue here.

Nevertheless, we find those cases from other jurisdictions that look to the nature and degree of the attorney's participation, instead of automatically imposing liability against an attorney who may participate in an illegal detention, more in harmony with the law in Texas dealing with false imprisonment in non-attorney contexts. For example, Texas courts have held that no liability for false imprisonment can be imposed on a party who merely reports facts to the authorities, and then the authorities determine to detain someone based on those facts. *See Sparkman v. Peoples Nat'l Bank of Tyler,* 501 S.W.2d 739, 744 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.). In *Sparkman,* a debtor sued the bank and its employees for false imprisonment after he was arrested and jailed on an allegedly defective criminal complaint. The bank's employee, McFarland, reported to a justice of the peace that the debtor was preventing a foreclosure sale of collateral by blocking access to it and displaying a shotgun. After full disclosure by McFarland, the arrest was made on a war-

rant issued by a justice of the peace who had authority to issue it. The court in *Sparkman* recognized the line of authority imposing liability for false imprisonment when the defendant participates in the error making the arrest illegal, but found no participation by the defendants when they only reported the facts. *Id.* at 744–45.

Appellees also cite the rule in Texas that an arrest under a warrant valid in form, issued by a competent authority on a sufficient complaint, is not false imprisonment. *Pate v. Stevens,* 257 S.W.2d 763, 766–67 (Tex. Civ.App.—Texarkana 1953, writ dism'd). In *Pate,* Mr. Pate initiated a complaint against his wife, and obtained statements from two doctors that she was mentally ill. Based upon these statements, the county judge issued a writ ordering Mrs. Pate committed to the state hospital. Mrs. Pate brought an action for false imprisonment and malicious prosecution against the doctors who attested to her condition. As the writ and other proceedings were valid on their face, there was no false imprisonment. *Id.* at 767. Even though we do not have a "complaint" in this case as in *Pate,* appellees assert that the writ of attachment itself is valid on its face, and there was a sufficient "complaint" to have the writ issued.

 Even though Texas courts have held that liability for false imprisonment should be determined by whether or not the defendant "requested or directed" the arrest, the complainant should not be liable for errors made by the magistrate. *J.C. Penney Co. v. Reynolds,* 329 S.W.2d 104, 106–08 (Tex.Civ.App.—El Paso 1959, writ ref'd n.r.e.). In *Reynolds,* Mrs. Reynolds was detained when the defendant-store attempted to collect on a check mistakenly written on the wrong bank. The store's employee made a full disclosure to the magistrate, and the court noted "it would seem unjust to hold someone guilty who has made an honest statement of the facts to a magistrate and then leaves to him such action as may be proper." *Id.* at 107. Consequently, the store was not liable for any illegal arrest and detention of appellee. *Id.* at 107–08. On the other hand, the lack of full disclosure to the authorities may result in liability. *Leon's*

*Shoe Stores, Inc. v. Hornsby,* 306 S.W.2d 402, 410 (Tex.Civ.App.—Waco 1957, no writ). In *Hornsby,* a credit manager's lack of full disclosure of facts disproving check forgery led to the plaintiff's false arrest and imprisonment. The store was held liable for damages for failing to inform police an employee recognized the plaintiff as who she claimed to be. *Id.*

We conclude that the extent and nature of the attorney's participation in the detention are critical factors in determining whether to impose liability against him for false imprisonment. Only if the attorney is the active and procuring cause of the detention, and misrepresents the facts or law, should he or she be held liable. Here, Towber informed the court that Bossin had never been served with the trial subpoena. He did not misrepresent the facts. Instead, he presented the constables' testimony and the court evaluated the evidence.

Even though Towber did not specifically move for or otherwise request the court to issue a writ of attachment, Bossin contends that Towber misrepresented the law by informing the court it had authority to have Bossin arrested by the federal marshals. Towber stated he "believe[d]" the court had the authority "to send a marshal to get Mr. Bossin and bring him to Court." Instead of moving for issuance of a writ of attachment, Towber suggested different alternatives to solve the problem of the unavailability of a necessary witness. While Towber may have sought issuance of a writ of attachment, his statement to the court could also be viewed as a request for the issuance of an *instanter* subpoena to merely compel Bossin's attendance at trial without handcuffing and jailing him. Towber also suggested that Bossin's deposition could be read at trial in lieu of Bossin's live testimony.

*Barry,* cited by appellees, supports the issuance of an arrest warrant without service of a subpoena when there is good reason to believe the witness will not be forthcoming. *Barry,* 279 U.S. at 616, 49 S.Ct. at 456. Therefore, Towber did not misrepresent the law. We hold that the attorney-appellees are not liable for false imprisonment as a matter of law.

The derivative liability of the Bank, the attorneys' employer, is contingent on the attorneys' liability under well established principles of respondeat superior. *See Marange v. Marshall,* 402 S.W.2d 236, 239 (Tex.Civ. App.—Corpus Christi 1966, writ ref'd n.r.e.). Because the attorney-appellees are not liable to Bossin, there can be no derivative liability to the Bank.

We hold that the trial court did not err in granting summary judgment in favor of all appellees on the claim of false imprisonment. For the same reasons, the court did not err in denying Bossin's motion for partial summary judgment on the false imprisonment cause of action. We overrule points of error one through five.

### NEGLIGENCE

In Bossin's sixth and seventh points of error, he asserts the trial court erred in denying his motion for partial summary judgment and granting appellees' motions as to his claims for negligence.

■■■ Under Texas law, an attorney owes a duty only to those parties in privity of contract with him. *Dickey v. Jansen,* 731 S.W.2d 581, 582 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). Because an attorney has no duty of care to non-clients, a non-client can have no claim for negligence against an attorney. *Wavell v. Roberts,* 818 S.W.2d 462, 465 (Tex.App.—Corpus Christi 1991, writ denied). Third parties in Texas have no standing to sue attorneys on causes of action arising out of their representation of others. *See, e.g., Graham v. Turcotte,* 628 S.W.2d 182, 184 (Tex.App.—Corpus Christi 1982, no writ) (mortgagor could not sue mortgagee's attorney claiming excessive fees charged on foreclosure). We hold that Bossin has no claim for negligence against the attorney-appellees.

Bossin makes no separate accusation of negligence against the Bank, but argues the Bank is derivatively liable under respondeat superior. As we find the attorneys owed Bossin no duty, the Bank also cannot be liable. *See Marange,* 402 S.W.2d at 239.

We conclude the trial court properly denied Bossin's motion for summary judgment and granted appellees' motions on the negligence claim. We overrule points of error six and seven.

### ABUSE OF PROCESS

■■■ Finally, in Bossin's eighth point of error, he complains of the trial court's grant of summary judgment in favor of appellees on his claim of abuse of process. The elements of a cause of action for abuse of process are:

(1) the defendant made an illegal, improper or perverted use of the process, a use neither warranted nor authorized by the process;

(2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process; and

(3) damage to the plaintiff as a result of such illegal act.

*Blanton v. Morgan,* 681 S.W.2d 876, 878 (Tex.App.—El Paso 1984, writ ref'd n.r.e.). Texas has generally recognized a cause of action for abuse of process where the original process, such as a writ, has been abused to accomplish an end other than that which the writ was designed to accomplish. *Martin v. Trevino,* 578 S.W.2d 763, 769 (Tex.Civ.App.— Corpus Christi 1978, writ ref'd n.r.e.).

■■■ It is critical to a cause of action for abuse of process that the process be improperly used *after* it has been issued. *See generally* Debra T. Landis, Annotation, *Civil Liability of Attorney for Abuse of Process,* 97 A.L.R.3d 688 (1980). If wrongful intent or malice caused the process to be issued initially, the claim is instead one for malicious prosecution. *Martin,* 578 S.W.2d at 769. "When the process is used for the purpose for which it is intended, even though accompanied by an ulterior motive, no abuse of process occurs." *Baubles & Beads v. Louis Vuitton, S.A.,* 766 S.W.2d 377, 378–379 (Tex.App.—Texarkana 1989, no writ). To constitute abuse of process, the process must have been used to accomplish an end which is beyond the purview of the process and compel a party to do a collateral thing which he could not be compelled to do. *Id.* at 379.

■■■ Here, appellees argue the bankruptcy court's order was used for the purpose it

was intended, i.e., to compel Bossin's attendance at trial. Bossin argues that it was the trial *subpoena* that constituted the process that was abused, rather than the writ of attachment. We agree with appellees that the process in this case was not abused. Neither the writ nor the subpoena were *used* improperly. The trial subpoena was never served, and the writ of attachment was used for its proper purpose. Rather, it was the court's decision to issue the writ. The trial court correctly granted summary judgment for appellees on the claim of abuse of process. We overrule point of error eight.

In conclusion, we affirm the summary judgment granted by the trial court that Bossin take nothing.

BARRON, J., concurs in the results only.

LEE, Justice, concurring.

While I agree that the attorney-appellees are not liable to Bossin for false imprisonment under the facts presented here, I disagree with the majority's conclusion that the trial court acted within its authority in ordering Bossin's arrest. I am not convinced that Judge Leal had authority to issue the writ of attachment for Bossin's arrest when Bossin had not failed to appear after a subpoena had been served.

The trial court's authority, however, is not determinative of the outcome of this matter. Instead, the proper test to determine an attorney's liability for false imprisonment is whether the attorney is the active cause of the detention, based upon the scope and degree of the attorney's participation. Under these facts, I agree with the majority's conclusion that Towber did not cause Bossin's detention so as to be liable for false imprisonment.