874 So.2d 654 (2004)
Montejo Gaspar MONTEJO, as Guardian of the person of Luis Alberto Jimenez, Appellant,
v.
MARTIN MEMORIAL MEDICAL CENTER, INC., Appellee.
No. 4D03-2638.
District Court of Appeal of Florida, Fourth District.
May 5, 2004.
Rehearing Denied June 29, 2004.
*655 JoNel Newman of Florida Legal Services, Inc., Miami and Michael R. Banks of Michael R. Banks, P.A., Stuart, for appellant.
George F. Bovie, III and Jennifer L. Williamson of Crary, Buchanan, Bowdish, Bovie, Beres, Elder & Thomas Chartered, Stuart, for appellee.
KLEIN, J.
Luis Alberto Jimenez was an undocumented alien working in Florida when he was severely injured in an accident, necessitating *656 the appointment of a guardian. Martin Memorial Medical Center, the hospital in which Jimenez was being treated, intervened in the guardianship proceedings to seek court approval to discharge Jimenez and transport him to a hospital in his home country, Guatemala. We reverse an order granting the hospital's requested relief.
Jimenez, who was thirty-one, suffered traumatic brain damage and severe physical injuries in a February, 2000 accident, while he was a passenger in a car. He was admitted to the hospital immediately after the accident and remained there until June, 2000, when the hospital transferred him to a nursing home. The court found Jimenez totally incapacitated and appointed his cousin's husband to be guardian of his person and property. In January, 2001, Jimenez was readmitted on an emergency basis to the hospital where he remained at the time of these proceedings. He currently has a personal injury suit pending in Florida.
In November, 2001, the guardian filed a guardianship plan stating that Jimenez would, for the next twelve months, need twenty-four hour nursing care at a hospital or skilled nursing facility. The hospital filed a petition for judicial review which alleged that the guardian was not acting in the ward's best interest. The hospital asserted, among other things, that it had applied for financial assistance for long-term care for Jimenez to no avail because, as an undocumented alien, he is not eligible for Medicaid or any other type of public assistance. The hospital sought to discharge Jimenez so that he could be transferred to a hospital in Guatemala, where his family resided. The court, following an evidentiary hearing, authorized the hospital to transport Jimenez to Guatemala, and the guardian appeals that order.
The guardian argues that the hospital was not an "interested party" under the statute governing participating in guardianship proceedings, section 744.3715(1). The hospital responds that it was interested because the hospital bills for Jimenez exceeded $1 million dollars and, except for about $80,000, which had been paid by Medicaid for emergency care, there were no funds available to pay for his care. We conclude that the hospital is "affected by the outcome" of the proceeding, section 731.201(21), Florida Statutes (2002), and is therefore interested.
We next address the hospital's argument that the appeal is moot, which is based on the following sequence of events. On June 27, 2003, the trial court entered the order authorizing the hospital to transport Jimenez to Guatemala, and the guardian moved for rehearing which was denied on July 9. The guardian filed a notice of appeal on July 9, along with a motion in the trial court for a stay pending appeal. The next day the hospital, at 7:30 A.M., flew Jimenez to Guatemala, before the court could rule on the stay.
The hospital argues that the appeal is moot because, now that Jimenez is in Guatemala, whether he can return is preempted by federal immigration law. That argument, however, only weakens the hospital's position on a different issue, which is whether the trial court had subject matter jurisdiction to authorize the hospital to transport Jimenez to Guatemala in the first place, because federal immigration law preempts deportation. Torros v. State, 415 So.2d 908 (Fla. 2d DCA 1982) (Florida judge could not order illegal alien to be deported to Cuba if he violates probation because of preemption of federal law). Johns v. Dep't of Justice, 653 F.2d 884 (5th Cir.1981). In addition, the mootness argument is only possible because the hospital put Jimenez on a plane early in *657 the morning on the day after the order became final, before the court could rule on the pending motion for stay. Finally, even if this case were moot, we are persuaded that it presents an important issue which is likely to recur.[1]Holly v. Auld, 450 So.2d 217 (Fla.1984).
The guardian argues that there was no substantial competent evidence to support the discharge from the hospital. As a Medicare provider, the hospital was required to comply with federal discharge requirements contained in 42 U.S.C. section 1395X(ee) and 42 C.F.R. section 482.43. Under 42 C.F.R. section 482.43(d), the patient can be transferred by a hospital only to an "appropriate facility" where the patient would receive post-hospital care. Such a facility is defined as one which can meet the patient's medical needs. 42 C.F.R. § 482.21(b)(2). 59 Fed. Reg. 64149.
Similarly, the hospital's own discharge policies and procedures require that the discharge plan identify the next appropriate level of care required by the patient, identify by name and address the receiving facility, provide the name of the supervising medical doctor who will take responsibility for the patient's care at the receiving facility, and confirm that the doctor will provide the patient with the identified appropriate level of care.
The hospital convened a discharge planning committee for Jimenez, and it determined that the next level of care he needed was traumatic brain injury rehabilitation. There are facilities in Florida which would have qualified; however, they would not accept Jimenez because he is indigent and does not qualify for Medicaid.
Some of the significant findings of the trial court, which were necessary in order for the hospital to be able to discharge Jimenez, were that Jimenez had reached a "therapeutic plateau," that remaining at the hospital would not improve his condition, and that this hospital, "as an acute care facility, cannot provide for the long-term therapy needs" of Jimenez. Based on those findings the court concluded that the guardian was not acting in Jimenez's best interest by allowing him to remain in the hospital.
At the evidentiary hearing the hospital attempted to satisfy the federal discharge requirements, as well as the hospital's own discharge requirements, by offering into evidence a letter from the Vice Minister of Public Health in Guatemala, Dr. Julio Molina, which stated:
[T]he system of the Rehabilitation and Orthopedic Hospital "Dr. Edwin Harold von Ahn," is ready to give the necessary care to Mister Luis Alberto Jimenez, 28 years of age [sic] and originally from the City of Antigua Guatemala, Sacatepequez [sic] and will do so as soon as he arrives to this county. We will evaluate and transfer him to the most appropriate facility for the treatment of his condition. The medical treatment to be available will be without any cost to Mister Jimenez.
The guardian objected to this letter as hearsay, but the trial court overruled the objection and admitted the letter into evidence. As it turned out, this letter was *658 the only thing on which the court could rely to make the necessary finding that appropriate medical care, traumatic brain injury rehabilitation, would be available in Guatemala.
This letter was not admissible in evidence under any exception to the hearsay rule that we know of, and indeed the hospital has not even responded to the argument that it was precluded by the hearsay rule. Even if the letter had been admissible, it was not nearly specific enough to satisfy either the federal regulations or the hospital's discharge procedures.
The only admissible evidence as to whether appropriate care would be available in Guatemala was the testimony of Dr. Miguel Graces, an expert on the Guatemalan public health care system. He testified that there are no public healthcare facilities providing traumatic brain injury rehabilitation in Guatemala.
We therefore reverse because (1) there was no competent substantial evidence to support Jimenez's discharge from the hospital, and (2) the trial court lacked subject matter jurisdiction to authorize the transportation (deportation) of Jimenez to Guatemala. Fla. Auto. Dealers Indus. Ben. Trust v. Small, 592 So.2d 1179 (Fla. 1st DCA 1992) (preemption determines subject matter jurisdiction). Reversed.
STONE and TAYLOR, JJ., concur.
NOTES
[1] Health Law Reporter (BNA), No. 29, Vol. 12 at 1130 (July 17, 2003), ("Hospital industry officials said the case illustrates a major problem faced by Florida providers"); Chardy, "Uninsured Patient Sent Home to Guatemala," "Miami Herald, July 11, 2003, at 1A (quoting Jackson Memorial Hospital and Florida Hospital Association spokespersons about importance of the precedent established by this case).