935 So.2d 1266 (2006)
Montejo Gaspar MONTEJO, as Guardian of the person of Luis Alberto Jimenez, Appellant,
v.
MARTIN MEMORIAL MEDICAL CENTER, INC., Appellee.
No. 4D05-652.
District Court of Appeal of Florida, Fourth District.
August 23, 2006.
*1267 Jack Scarola and Jack P. Hill of Searcy Denney Scarola Barnhart & Shipley, P.A., West Palm Beach, and Brenda J. Carter, Fort Lauderdale, for appellant.
Scott H. Michaud and K. Calvin Asrani of Michaud, Mittelmark & Antonacci, P.A., Boca Raton, for appellee.
STEVENSON, C.J.
Montejo Gaspar Montejo, the guardian of Luis Alberto Jimenez, appeals an order dismissing with prejudice his false imprisonment claim against Martin Memorial Medical Center, Inc. Because Martin Memorial was not cloaked with absolute immunity from civil liability when acting pursuant to a void court order, we reverse the judgment of the trial court and remand for further proceedings.
In February 2000, Luis Alberto Jimenez, an undocumented native of Guatemala who was living and working in Florida, sustained brain damage and severe physical injuries as a consequence of a car crash. Jimenez was transported to Martin Memorial Medical Center and remained there until June 2000, when he was transferred to a skilled nursing facility. The injuries suffered by Jimenez rendered him incompetent and a circuit court judge appointed Montejo guardian of Jimenez's person and property.
On January 26, 2001, Jimenez was readmitted to Martin Memorial on an emergency basis and, as of November 2001, was still incapacitated and still receiving medical care at Martin Memorial. Around this time, Montejo filed a guardianship plan, indicating Jimenez would require twenty-four hour care at a hospital or skilled care facility for the next twelve months. As the costs of Jimenez's medical care were mounting, Jimenez was indigent, and Medicaid had refused to pay because he was an illegal alien, Martin Memorial intervened in the guardianship proceedings. In its petition, Martin Memorial claimed the guardian had failed to ensure Jimenez was in the best facility to meet his medical needs and the hospital was not the appropriate facility to provide the long-term rehabilitative care required. Martin Memorial sought permission to discharge Jimenez and have him transported to Guatemala for further care. Pursuant to federal law, in order to discharge Jimenez, Martin Memorial was required to demonstrate appropriate medical care was available. On June 27, 2003, following a hearing, the circuit court granted Martin Memorial's petition, directing the guardian to refrain from frustrating the hospital's plan to relocate Jimenez to Guatemala and authorizing the hospital to provide, at its own expense, "a suitable escort with the necessary medical support for the Ward's trip back to Guatemala."[1]
On July 9, 2003, the same day that his motion for rehearing was denied, Montejo *1268 filed a notice of appeal directed to the circuit court's order. At the same time that he filed the notice of appeal, Montejo filed a motion to stay the court's June 27, 2003 order. According to Montejo, although the circuit court ordered Martin Memorial to file a response to the motion to stay by 10:00 a.m. the following day, sometime before 7:00 a.m., the hospital took Jimenez to the airport via ambulance and transported him by private plane to Guatemala.
In an opinion issued on May 5, 2004, this court reversed the order that had "authorized" Martin Memorial to transport Jimenez to Guatemala. See Montejo v. Martin Mem'l Med. Ctr., Inc., 874 So.2d 654 (Fla. 4th DCA 2004). In the opinion's final paragraph, the panel wrote that it was reversing not only because there was insufficient evidence that Jimenez could receive adequate care in Guatemala, but also because "the trial court lacked subject matter jurisdiction to authorize the transportation (deportation) of Jimenez to Guatemala." 874 So.2d at 658.
In September 2004, Montejo filed a lawsuit, alleging Martin Memorial's confining Jimenez in the ambulance and on the airplane amounted to false imprisonment and seeking damages for the same. Martin Memorial filed a motion to dismiss or for judgment on the pleadings, arguing (1) that Montejo lacked standing and (2) that Montejo had not and could not state a cause of action because he had not and could not demonstrate the detention was unreasonable and unwarranteda necessary element of a claim for false imprisonment. With regard to the latter argument, Martin Memorial insisted the detention could not be unreasonable and unwarranted because its transporting Jimenez to Guatemala was done pursuant to a then-valid court order and, as such, its actions were afforded immunity. Following a hearing, the trial court granted Martin Memorial's motion and dismissed Montejo's false imprisonment suit with prejudice. This appeal arises from that order of dismissal.
Montejo insists the dismissal of his false imprisonment claim cannot be sustained upon either the theory that he lacked standing or that he had not and could not state a cause of action because Martin Memorial's actions were somehow cloaked with immunity. To begin, we find Montejo had standing to bring the false imprisonment claim and reject without further comment Martin Memorial's arguments to the contrary.
This, then, brings us to the matter of whether Martin Memorial's transporting Jimenez to Guatemala could provide the foundation for a false imprisonment claim despite the fact that such actions were taken in reliance upon the circuit court's June 27, 2003 order. The question we must decide is whether a litigant is entitled to "immunity" from a false imprisonment claim for actions taken in reliance upon an order that is later determined to have been entered in the absence of subject matter jurisdiction. We conclude that, under existing Florida law, the answer is no and that the cause of action in the instant case may proceed.
The elements of a cause of action for false imprisonment have been stated in various ways by Florida courts, but, essentially, all have agreed that the elements include: 1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or "color of authority" and 4) which is unreasonable and unwarranted under the circumstances. See Johnson v. Weiner, 155 Fla. 169, 19 So.2d 699, 700 (1944); Jackson v. Navarro, 665 So.2d 340, 341 (Fla. 4th DCA 1995); Everett v. Fla. Inst. of Tech., 503 So.2d 1382, 1383 (Fla. 5th *1269 DCA 1987); Kanner v. First Nat'l Bank of S. Miami, 287 So.2d 715, 717 (Fla. 3d DCA 1974). In Johnson, the Florida Supreme Court stated that the element of legal authority may be demonstrated by irregular or voidable process, but "`[v]oid process will not constitute legal authority within this rule.'" 19 So.2d at 700 (emphasis added) (quoting S.H. Kress & Co. v. Powell, 132 Fla. 471, 180 So. 757, 762 (1938)) (other citation omitted). It is equally clear that Florida law holds that an order entered in the absence of subject matter jurisdiction is void. See, e.g., Cesaire v. State, 811 So.2d 816, 817 (Fla. 4th DCA 2002). In the prior opinion in this case, this court held that the circuit court judge lacked subject matter jurisdiction to authorize the hospital to transport Jimenez to Guatemala. See 874 So.2d at 658.
Initially, Martin Memorial contends that Montejo cannot state a cause of action for false imprisonment because the alleged confinement in the ambulance and plane was performed in furtherance of a court order and "is protected by the absolute immunity related to judicial proceedings." In support of this argument, Martin Memorial cites Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Insurance Co., 639 So.2d 606 (Fla.1994), and American National Title & Escrow of Florida, Inc. v. Guarantee Title & Trust Co., 748 So.2d 1054 (Fla. 4th DCA 1999). In Levin, the insurer represented to the court that one of the firm's attorneys would be called as a witness in the bad faith litigation; as a result, the firm was disqualified from the representation. When the insurer failed to follow through, the firm filed a claim for tortious interference with a business relationship. The insurer insisted the claim was barred by the litigation privilege. The Florida Supreme Court agreed, writing that "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding. . . so long as the act has some relation to the proceeding." 639 So.2d at 608.
In American National Title & Escrow, a law firm representing two title insurers obtained a temporary injunction and an order appointing a receiver and was sued for abuse of process related to the court-appointed receiver's entry into the business offices and the president's home to obtain records. This court affirmed the trial court's entry of summary judgment in favor of the law firm because the misconduct alleged was done "pursuant to the receivership" and was therefore protected by the absolute immunity afforded conduct related to judicial proceedings. 748 So.2d at 1056. This court stated:
Appellants' argument that Levin should be limited to publications or communications during litigation has no merit. Prior to Levin, the court had already decided that statements amounting to perjury, libel, slander, and defamation were not actionable. The essence of Levin was its extension of absolute immunity to acts taken during the proceeding, not just statements made therein. The acts taken here were all done pursuant to the receivership and the order of authority to the receiver.
Id. at 1055-56 (citation omitted).
In the instant case, we cannot agree that Martin Memorial's alleged misconduct occurred "during the course of the judicial proceedings" such that the litigation privilege discussed in Levin and American National Title & Escrow would apply. In discussing the rationale for the litigation privilege, the court in Levin explained:
In balancing policy considerations, we find that absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory *1270 statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding. Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.
639 So.2d at 608. Here, Martin Memorial's actions were taken neither during the course of the judicial proceedings nor in an effort to prosecute or defend its lawsuit. Unlike American National Title & Escrow, where the court appointed a receiver to take control of the business for the purposes of obtaining records and conserving assets which were the subject of the litigation, the court in the instant case merely allowed Martin Memorial to proceed on its own chosen course of action, which was to be taken after the judicial proceedings were concluded. In our view, to afford Martin Memorial absolute immunity from potential tort liability under the circumstances of this case would be an unwarranted and improper extension of the litigation privilege.[2]
Martin Memorial further suggests that because it acted in reliance on the court order, it should be cloaked with qualified or quasi-judicial immunity to the same extent as that afforded to state agents executing the order of a trial court. We disagree. Those authorities which suggest that the immunity to be afforded those who execute the judge's order should be co-extensive with the immunity afforded the judge[3] reason that those who execute court orders are "`integral parts of the judicial process'" and that "[t]he fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised," see Coverdell v. Dep't of Social & Health Servs., Wash., 834 F.2d 758, 765 (9th Cir.1987) (finding child protective services worker who took custody of child pursuant to court order, but without requisite notice to parent or her attorney, was immune from suit) (quoting Briscoe v. LaHue, 460 U.S. 325, 335, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)), and thus hold that "`official[s] charged with the duty of executing a facially valid court order enjoy[] absolute immunity from liability for damages in a suit challenging conduct prescribed by that order,'" see Turney v. O'Toole, 898 F.2d 1470, 1472 (10th Cir. 1990) (quoting Valdez v. City & County of Denver, 878 F.2d 1285, 1286 (10th Cir. 1989)). See also Zamora v. City of Belen, 383 F.Supp.2d 1315, 1326 (D.N.M.2005) ("[I]t is irrelevant to the executing officer's absolute immunity from suit under § 1983 if the court order violates a statute, or is erroneous or even unconstitutional, as long *1271 as it is `facially valid.'") (quoting Turney, 898 F.2d at 1473). Florida law is consistent with the federal authorities on this issue. See Willingham v. City of Orlando, 929 So.2d 43, 49 (Fla. 5th DCA 2006) (citing a number of federal cases, including Valdez, and recognizing that "so long as a warrant is valid on its face, [a state agent] is entitled to an absolute grant of immunity springing from the judicial immunity of the judicial officer who issued the warrant"). In the instant case, Martin Memorial was not an agent of the government executing an order of the court.
In the present case, by procuring and obtaining the order allowing the deportation of Jimenez, Martin Memorial was seeking the vindication or enforcement of a purely private right. Cases in other jurisdictions have held that in instances where the object of the detention (i.e., false imprisonment) of an individual is for the protection or enforcement of a private right, the person procuring the detention has no immunity from a claim for money damages where the court issuing the order has exceeded its jurisdiction. The rationale for this rule was explained in Hamilton v. Pacific Drug Co., 78 Wash. 689, 139 P. 642, 644 (1914), a case in which the court allowed a false imprisonment suit to proceed where the defendant procured a warrant for the plaintiff's arrest as an "absconding debtor" and the lower court had no jurisdiction to authorize the arrest:
It is argued that, since the arrest was upon a warrant authorized by order of the superior court, the appellant is exonerated from liability, even though the law at the present time does not authorize the arrest. In support of this position a number of cases are cited, all but one of which appear to have been where the arrest was made in a criminal proceeding. There, the party complaining and setting the machinery of the law in motion, which results in the arrest of a person, is acting, not on his own account or for his own private benefit, but for the public, enforcing the public's right to have the public law obeyed. A rule of law which would exonerate from liability a person causing an arrest in a criminal proceeding when acting without malice, and with probable cause, even though there be no law justifying the arrest, is not applicable where the arrest is caused for the purpose of enforcing a claim of private right. While there is some confusion in the authorities, and this distinction has not always been recognized, it would seem, nevertheless, that it is supported by reason. Where, in a civil case, a party causes his adversary to be arrested unlawfully, a stricter rule of liability should obtain than where a citizen inspiring the arrest has been actuated by public interest solely. A person who causes the arrest of another in a civil proceeding must answer in damages, even though the arrest was in pursuance of an order of court, when the court issuing the order has exceeded its jurisdiction, or had no authority to do so.
Id. See also Yahola v. Whipple, 189 Okla. 583, 118 P.2d 395 (1941) (allowing a cause of action for false imprisonment to proceed where the plaintiff's detention was at the instance of a void court order procured by the defendant); Pomeranz v. Class, 82 Colo. 173, 257 P. 1086 (1927) (finding a receiver and his attorney liable for false imprisonment damages as a consequence of procuring a void order adjudging the plaintiff guilty of contempt notwithstanding the immunity of the judge and the officer serving the warrant of arrest). The results in the foregoing cases are consistent with Florida law, since a void judgment does not suffice as "legal authority" or "color of authority" within the elements of a cause of action for false imprisonment. See Johnson, 19 So.2d at 700; Jackson, *1272 665 So.2d at 341; see also Jibory v. City of Jacksonville, 920 So.2d 666 (Fla. 1st DCA 2005) (holding that a false imprisonment claim would lie against the city where the warrant upon which the plaintiff was arrested was void), review dismissed, 926 So.2d 1269 (Fla.2006).
In conclusion, we note that in order for a plaintiff to recover on a false imprisonment claim, all of the elements must be proven. Here, while the issue of whether Martin Memorial acted with legal authority may be resolved as a matter of law, the trier of fact must determine as a matter of fact whether Martin Memorial's actions were unwarranted and unreasonable under the circumstances. See Rivers v. Dillards Dep't Store, Inc., 698 So.2d 1328 (Fla. 1st DCA 1997) (holding that even where some authority to restrain liberty exists, the reasonableness of the procedures followed may present a question of fact). Accordingly, we reverse the order dismissing Montejo's false imprisonment suit and remand for further proceedings.
Reversed and Remanded.
GUNTHER and TAYLOR, JJ., concur.
NOTES
[1] Specifically, the court found the guardian had failed to act in Jimenez's best interests "by allowing the Ward to remain in the inappropriate residential setting of an acute care hospital" and thus ordered that the guardian "shall consent to, fully cooperate in and refrain from frustrating the Hospital's discharge plan to relocate the Ward back to Guatemala" and that the hospital "shall, at its own expense, provide a suitable escort with the necessary medical support for the Ward's trip back to Guatemala."
[2] Further, we do not believe that the litigation privilege discussed in Levin would apply to the instant case where the court entering the order lacked subject matter jurisdiction and the order acted upon was void.
[3] As this court recognized in Berry v. State, 400 So.2d 80, 83 (Fla. 4th DCA 1981), "judicial immunity traces its roots to the earliest days of the common law and emerged in American jurisprudence with the landmark case of Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872)." Generally, "judges . . . are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction." Id. at 83 (quoting Bradley, 80 U.S. at 351). Nevertheless, even judicial immunity may be lost when the judge acts in the clear absence of all jurisdiction. See Farish v. Smoot, 58 So.2d 534 (Fla. 1952); Waters v. Ray, 167 So.2d 326 (Fla. 1st DCA 1964).