[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13064

Non-Argument Calendar

_____

FABIANO B. PINTO,

Plaintiff-Appellant,

*versus*

COLLIER COUNTY, et al.,

Defendants,

KEVIN J. RAMBOSK,
MATTHEW A. KINNEY,
JOSHUA CAMPOLO,
ADAM J. DILLMAN,

2                    Opinion of the Court                 21-13064

STEVE MAHOLTZ, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:19-cv-00551-JLB-MRM

_____

Before BRANCH, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Fabiano Pinto appeals from the grant of summary judgment
to two Florida sheriff's deputies—Matthew Kinney and Steve
Maholtz—on various 42 U.S.C. § 1983 and Florida state law
claims—false imprisonment, false arrest, malicious prosecution,
excessive force, and battery—stemming from an incident outside a
nightclub on Pinto's thirtieth birthday and his subsequent arrest for
battery of a law enforcement officer.  Because Kinney had probable
cause to arrest Pinto and used only reasonable force, all of Pinto's
claims fail, and we affirm the district court.

## I.    Factual Background

Pinto and a group of twenty to twenty-five friends and
family members were out celebrating Pinto's thirtieth birthday in

Naples, Florida.   At one point in the evening, they went to Mercato—an outdoor shopping center with several restaurants, bars, and clubs.  At some point after midnight, the group sought to enter the Cavo Lounge, one of the bars in Mercato.  Seeing a line and roped-off entrance, Pinto approached the manager, Jason Buro, and asked whether Cavo had room for "about 20 people." Buro told Pinto that the bar was full and that the group could not enter.  But Pinto saw his sister and several members of his group enter Cavo from a different entrance.  Trying to get his sister's attention amid the loud atmosphere to let her know that the group planned to walk down to a different bar, Pinto began waiving his right hand in her direction, at which point Buro "smacked down" Pinto's hand.  Pinto then told Buro, "What the fuck was that about? What did you do that for?" and, according to Pinto, Buro told him that he "was waiving too close to him and . . . was getting too close to [Buro's] face" and to "[g]et the 'F' out of here."  Pinto responded by apologizing and explaining that he was trying to get his sister's attention.

That night, Deputy Kinney was on special-detail duty at Mercato and was standing about 10 feet away from Pinto and Buro. Several other sheriff's deputies were also present on the scene. Kinney observed the altercation between Buro and Pinto, and, according to Pinto, approached and pushed Pinto on his shoulder "or back area" as he was turning to leave the entrance to Cavo.  As a result of the push, Pinto stumbled "probably two feet, two and a half" feet but did not fall.  Pinto explained that, to maintain balance,

he extended his right arm and his hand made contact with Kinney's chest. Pinto said he "knew [he] wasn't touching regular clothes," and when Pinto turned around, he realized that Kinney was law enforcement because he was wearing a uniform marked "sheriff."

Kinney immediately grabbed Pinto's left arm and placed it behind his back, but Pinto kept his right hand in the air, allegedly because he was confused as to why he was being arrested. Another deputy grabbed Pinto's right arm and handcuffed him. The officers held Pinto's arms and, according to Pinto, his "arm was just kind of pushed up a little bit too far, further than [Pinto] could put [his] shoulders."

After he was handcuffed, Pinto was escorted by Kinney and another deputy to a parking garage where a patrol car was waiting. Following behind were several members of Pinto's party.

The officers positioned Pinto standing against the side of the patrol car, where he was searched. Cell phone footage shows the individuals who were with Pinto yelling at police officers and repeatedly approaching the police vehicle. At one point in the video recording, Pinto—standing against the car—yells "I am not resisting. I am not resisting at all," and turns his head to Kinney and asks, "What the fuck are you doing?"[1] The video then shows Kinney using his hand to push and temporarily hold Pinto's face

---

[1] This comment is not audible in the video recording, but in his deposition, Pinto confirmed that he said "What the fuck are you doing?" when he turned his head toward Kinney.

back.  Several officers then placed Pinto in the vehicle, and he was driven to the Naples jail and booked for, among other things, battery on a law enforcement officer.  He was released on bond the next day, and the state attorney ultimately dismissed all charges.

## II.    Procedural Background

Pinto sued Kinney and Maholtz in their individual capacities, along with several other county officials and law enforcement officers, bringing federal constitutional claims under § 1983 as well as Florida state law claims.  In particular, as relevant to this appeal,[2] Pinto asserted numerous claims against Kinney, including false arrest and false imprisonment under the Fourth Amendment, excessive force under the Fourth Amendment, false arrest and imprisonment under Florida law, and Florida battery.  He also asserted a malicious prosecution claim under Florida law against both Kinney and Deputy Steve Maholtz.[3]

Kinney and Maholtz moved for summary judgment, Pinto opposed the motion and cross-moved for summary judgment, and the district court granted summary judgment to the defendants. The district court found that, because Kinney had probable cause to arrest Pinto, his false arrest and imprisonment claims—federal

---

[2] Pinto asserted several other claims against a variety of defendants that he has not raised on appeal that we therefore do not discuss.

[3] Maholtz was on the scene during Pinto's arrest and wrote a police report attesting that he witnessed Pinto "push or stiff-arm" Kinney.

and state—failed as a matter of law.[4]  As to Pinto's Florida battery claim, the district court found that Kinney never used excessive force against Pinto.[5]  It similarly rejected Pinto's § 1983 excessive force claim, concluding that Kinney used reasonable force.[6]

Finally, the district court rejected Pinto's malicious prosecution claim under Florida law against Kinney and Maholtz because, among other reasons, there was probable cause for the original charges against Pinto.

Accordingly, the district court entered summary judgment for the defendants.  Pinto timely appealed.

### III.    Standard of Review

We review *de novo* a district court's grant of summary judgment, viewing the evidence in the light most favorable to the nonmovant.  *Burton v. Tampa Hous. Auth.*, 271 F.3d 1274, 1276–77 (11th Cir. 2001).  Although we must view the facts in favor of

---

[4] Alternatively, the district court found that even absent actual probable cause, Pinto's claims of false imprisonment and arrest failed because Kinney had arguable probable cause and was entitled to qualified immunity (on the § 1983 claims) and state sovereign immunity on the Florida law claims.

[5] The district court alternatively held that, as to the Florida battery claim, Pinto failed to show that Kinney acted in bad faith or with malicious purpose so the officials were shielded by state sovereign immunity.

[6] The district court also held that, even if Kinney did use excessive force, he was still entitled to qualified immunity because he did not violate Pinto's clearly established rights.

the nonmoving party, we accept video evidence over the nonmoving party's account when the former obviously contradicts the latter. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). "Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Burton*, 271 F.3d at 1277 (quotation omitted).

## IV.    Discussion

On appeal, Pinto challenges the district court's grant of summary judgment to the defendants on these claims: (1) false arrest and false imprisonment under the Fourth Amendment against Kinney; (2) excessive force under the Fourth Amendment against Kinney; (3) false arrest and imprisonment under Florida law against Kinney; (4) Florida battery against Kinney; and (5) malicious prosecution under Florida law against Kinney and Maholtz. As explained further below, because Kinney had probable cause to arrest Pinto for battery of a law enforcement officer and because he used reasonable force throughout his interaction with Pinto, the district court did not err in granting summary judgment on Pinto's claims.

### A.  Officer Kinney Had Probable Cause to Arrest Pinto

#### 1.  False Arrest and False Imprisonment

Pinto claims that his arrest and detention at the hands of Officer Kinney constituted false arrest and false imprisonment under the Fourth Amendment and Florida law because Kinney lacked probable cause to arrest him.

The protection of qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). And because the officers were acting within their discretionary authority, "it falls to [Pinto] to show that qualified immunity should not apply." *Crocker v. Beatty*, 995 F.3d 1232, 1239–40 (11th Cir. 2021) (quotation omitted). A plaintiff can show that qualified immunity should not apply by establishing (1) that the defendant violated a constitutional right and (2) that the right was "clearly established" at the time of the alleged misconduct. *Id.* at 1240. It is within our discretion to affirm based on either prong. *Pearson*, 555 U.S. at 236.

On Pinto's § 1983 false arrest and imprisonment claims, Kinney is entitled to qualified immunity because he did not violate Pinto's constitutional rights because he had probable cause to arrest Pinto. Pinto's state law false imprisonment and arrest claims fail for the same reason.

It is well established that probable cause is an absolute bar to false arrest and imprisonment claims under both § 1983 and Florida law. *Crocker*, 995 F.3d at 1245; *see also Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) ("[P]robable cause constitutes an absolute bar to both state and § 1983 claims alleging false arrest . . . ."); *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996) ("Where a police officer lacks probable cause to make an

arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest."). Moreover, "the standard for determining whether probable cause exists is the same under Florida and federal law." *Rankin*, 133 F.3d at 1435.

A law enforcement officer has probable cause to arrest a suspect when "a reasonable officer could conclude . . . that there was a substantial chance of criminal activity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018); *see also Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022). In determining whether an officer had probable cause for an arrest, we look to the events preceding the arrest "from the standpoint of an objectively reasonable police officer." *Wesby*, 138 S. Ct. at 586 (quotation omitted). Probable cause requires only "a probability" or "substantial chance of criminal activity, not an actual showing of such activity." *Id.* (quotation omitted). It "is not a high bar." *Id.* (quotation omitted).

Under Florida law, a person commits a battery on a law enforcement officer if he

> (1) intentionally touched or struck the victim or intentionally caused bodily harm to the victim; (2) the victim was a law enforcement officer; (3) the defendant knew that the victim was a law enforcement officer; and (4) the law enforcement officer was engaged in the lawful performance of his or her duties when the battery was committed.

*State v. Granner*, 661 So. 2d 89, 90 (Fla. 5th DCA 1995). Critical for our purposes, the touching element of this offense can be satisfied "by any physical contact, no matter how slight," *United States v. Vail-Bailon*, 868 F.3d 1293, 1298 (11th Cir. 2017) (quotation omitted), including "only nominal contact" such as "tapping a law enforcement officer on the shoulder without consent," *State v. Hearns*, 961 So. 2d 211, 219 (Fla. 2007).

Pinto's hand made contact with Kinney's chest. Kinney was wearing a uniform with the word "sheriff" displayed on the front. From the perspective of an objectively reasonable police officer, Pinto's conduct established probable cause to arrest him for the offense of battery on a law enforcement officer.

Pinto disagrees, contending that viewing the facts in his favor "show[s] that he, in no way, intentionally touched or struck Kinney" and "that Pinto did not even know that Kinney was an officer." But the existence of probable cause turns on neither Pinto's actual intent nor his subjective impression of the nature of his contact with Kinney. We instead analyze the events preceding an arrest from the perspective of an "objectively reasonable police officer." *See Wesby*, 138 S. Ct. at 586. And given that even slight contact satisfies the intentional touching element of battery on a law enforcement officer under Florida law, an objectively reasonable officer could view Pinto's contact with Kinney as creating a substantial chance of criminal activity.

It is also irrelevant that Pinto did not know that Kinney was a law enforcement officer because, viewed from the perspective of

an objectively reasonable officer, there was at least a "substantial chance" that Pinto saw the word "sheriff" before he touched Kinney's vest. Kinney is therefore entitled to qualified immunity on Pinto's § 1983 false arrest claim because, given the existence of probable cause, Kinney did not violate Pinto's constitutional rights.[7]

---

[7] Pinto argues in the alternative that the false arrest and imprisonment occurred when Kinney pushed Pinto—before Pinto touched Kinney, which was the act that gave Kinney probable cause to arrest him. But Pinto never presented this theory or argument below. Because Pinto raised this issue for the first time on appeal, we need not consider it. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

Moreover, even if Pinto's argument were properly before us, we would reject it because the push was not a seizure under the Fourth Amendment. A person is seized under the Fourth Amendment when an officer, "by means of physical force or show of authority, terminates or restrains his freedom of movement through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (quotations and internal citation omitted). A Fourth Amendment seizure requires an objective manifestation of "an intent to restrain." *Torres v. Madrid*, 141 S.Ct. 989, 998 (2021). Critically, "force intentionally applied for some other purpose" is not a seizure. *Id.*

Kinney did not seize Pinto by pushing him. Although the force was "intentionally applied," it was not done to restrain Pinto or terminate his movements but "for some other purpose"—*i.e.*, to separate him from the manager to prevent an escalation of the altercation between the two men. *See id.*; *see also Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (holding that a sheriff did not seize a woman by pushing her out of the way of his path because "he did not intend to acquire physical control over her"). The push was therefore not a seizure.

12                    Opinion of the Court                    21-13064

And, as discussed above, the existence of probable cause is also an absolute bar to false arrest and imprisonment claims under Florida law, *Crocker*, 995 F.3d at 1245, and "the standard for determining whether probable cause exists is the same under Florida and federal law," *Rankin*, 133 F.3d at 1435. Accordingly, Pinto's state law false arrest and imprisonment claims fail as well.

### 2. Malicious Prosecution

Pinto argues that his arrest constituted malicious prosecution under Florida law because Kinney lacked probable cause to arrest him for battery of a law enforcement officer and Maholtz made false statements that Pinto pushed or stiff-armed Kinney—when, according to Pinto, he only incidentally touched Kinney as he was regaining his balance after being pushed.[8]

---

Pinto's Florida false arrest and imprisonment claims related to the initial push fail similarly. Under Florida law, the elements of false imprisonment are "(1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or "color of authority"; and (4) which is unreasonable and unwarranted under the circumstances." *Montejo v. Martin Mem'l Med. Ctr.*, 935 So. 2d 1266, 1268–69 (Fla. 4th DCA 2006). Pinto's claim fails at step one because the push was not a "detention" or a "deprivation of liberty."

[8] We note that, in the district court, Pinto also asserted a Fourth Amendment malicious prosecution claim under § 1983, which the district court rejected. Pinto does not challenge the district court's grant of summary judgment on the § 1983 malicious prosecution claim.

To prevail on a malicious prosecution claim under Florida law, a plaintiff must establish:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) *there was an absence of probable cause for the original proceeding*; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

*Debrincat v. Fischer*, 217 So. 3d 68, 70 (Fla. 2017) (quotation omitted) (emphasis added).

Although it is true that an "arrest without further prosecution" can serve as the basis for a malicious prosecution action, *Levine v. Hunt*, 932 So. 2d 1292, 1293 (Fla. 2d DCA 2006), Pinto's claim nonetheless fails. Because, as discussed above, Kinney had probable cause to arrest Pinto for battery of a law enforcement officer, he cannot show an absence of probable cause for the original proceeding. Accordingly, his malicious prosecution claim fails.

## B. Officer Kinney used reasonable force in arresting Pinto

Pinto also appeals the grant of summary judgment for the defendants on his Florida battery and his § 1983 Fourth

Amendment excessive force claims.  Pinto argues that Kinney used excessive force when he initially pushed Pinto, pushed Pinto's arms up at an awkward angle while handcuffed, and pushed Pinto's face toward the police car when Pinto was not resisting.  Pinto also argues that these acts constituted Florida battery.

### 1.  § 1983 Excessive Force Claim

"[I]n addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force," as there is no "'generic "right" to be free from excessive force.'" *Crocker*, 995 F.3d at 1246 (quoting *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)).  Pinto alleges that Kinney violated his rights under the Fourth Amendment to be protected against "unreasonable . . . seizures."  *See Graham*, 490 U.S. at 394–95.

The key inquiry then is whether the officer's use of force was "objectively reasonable" under the circumstances.  *Id.* at 388, 397. We judge "[t]he 'reasonableness' of a particular use of force from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.* at 396.  The proper application of this test requires "careful attention to the facts and circumstances," including factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.*

Critically, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 397 (quotation and internal citation omitted). "The calculus of reasonableness must" recognize the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* We have long recognized that "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000). After all, "the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof, and the typical arrest involves some force and injury." *Sebastian v. Ortiz*, 918 F.3d 1301, 1308 (11th Cir. 2019) (quotation omitted).

Pinto has failed to show that Kinney violated his Fourth Amendment rights. For starters, Pinto's claim that Kinney used excessive force when he pushed him to separate Pinto from Buro fails. Fourth Amendment excessive force claims are rooted in the right to be free from "unreasonable . . . seizures." *See Graham*, 490 U.S. at 393–95; *see also Crocker*, 995 F.3d at 1246. And as discussed in footnote 7, Kinney's initial push was not a seizure under the Fourth Amendment because it was not done with "an intent to restrain," but rather "for some other purpose"—namely to separate two men engaged in an altercation outside of a crowded

bar. *See Torres*, 141 S.Ct. at 998. Pinto's claim as it relates to the initial push fails accordingly.

Turning to the force used in arresting Pinto, including Kinney putting his hand against Pinto's face and pushing him against the car, we conclude that such force was de minimis and did not violate the Fourth Amendment. The cell phone video recording shows that after Pinto yelled "I am not resisting" repeatedly, he turned his head to the officers, got close to their faces, and said "what the fuck are you doing," at which point Kinney used his hand to push and temporarily hold Pinto's face back in the direction of the patrol car. We have held in similar situations that this type of force was de minimis or otherwise did not violate the Fourth Amendment. *See, e.g.*, *Nolin*, 207 F.3d at 1255 (holding that an officer grabbing the suspect and shoving him a few feet against vehicle, pushing his knee into the suspect's back and the suspect's head against van was de minimis force); *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (holding that officer did not use excessive force when he "grabbed plaintiff's arm, twisted it around plaintiff's back, jerking it up high to the shoulder and then handcuffed plaintiff as plaintiff fell to his knees screaming that [the officer] was hurting him," noting that "[p]ainful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal"); *Jones v. City of Dothan*, 121 F.3d 1456, 1458, 1460–61 (11th Cir. 1997) (de minimis force when police slammed the suspect against the wall, kicked his legs apart

21-13064          Opinion of the Court          17

and required him to raise his arms above his head as officers carried out arrest).

Pinto points to our decision in *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002), where we held an officer used excessive force in arresting the plaintiff. Pinto claims *Lee* is "factually indistinguishable" from his case. We are unpersuaded. In *Lee*, the plaintiff was arrested after violating a local horn honking ordinance. *Lee*, 284 F.3d at 1190–91. The officer pulled her out of her car by the wrist and, after she was handcuffed and fully secure, the officer took her to the back of her car, spread her legs with his foot, and slammed her head onto the trunk. *Id.* at 1191. As a result of the force used, the plaintiff suffered severe emotional trauma and diagnoses of "bilateral wrist trauma" and nerve damage. *Id.* at 1192. In rejecting the officer's argument that the force used was "de minimis," we specifically noted that the horn honking offense was not severe and that the disproportionate force was used after "the arrestee [was] completely secured, and all danger vitiated." *Id.* at 1199–1200.

In contrast, Pinto was arrested for a more serious offense (battery on a law enforcement officer), he suffered no serious physical injuries, and, importantly, unlike in *Lee*, where the excessive force took place in a parking lot with no record of any bystanders, *id.* at 1190, here, as revealed by the cell phone video, Kinney pushed Pinto's face amid a large gathering of Pinto's friends who were yelling at and approaching the officers and the vehicle where Pinto was being secured. Pinto himself turned his head

18                    Opinion of the Court                    21-13064

toward Kinney to yell at him.  So as explained above, the force Kinney used was de minimis and distinct from the excessive force at issue in *Lee.*  Kinney therefore did not violate Pinto's constitutional rights and is entitled to qualified immunity.

### 2.  Florida Battery

We come to a similar conclusion about Pinto's state law battery claim.  "A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *City of Miami v. Sanders*, 672 So.2d 46, 47 (Fla. 3d DCA 1996).  We apply a presumption of good faith to law enforcement conduct, holding officers liable only where the force used is "clearly excessive." *Id.*; *Davis v. Williams*, 451 F.3d 759, 768 (11th Cir. 2006).  Given that Kinney's use of force was de minimis and reasonable under the circumstances, it was not "clearly excessive" for purposes of Pinto's Florida battery claim, and that claim fails accordingly.[9]

---

[9] To be sure, *Sanders* focused on the use of force during an arrest, and part of Pinto's battery claim involves Kinney's pre-arrest push to separate Pinto from Buro.  But we see no reason that the reasonableness inquiry should apply any less to battery claims against law enforcement for pre-arrest force.  It is well-established in Florida law that "[t]he limit of the force to be used by the police is set at the exercise of such force as reasonably appears necessary to carry out the duties imposed upon the officer by the public." *City of Fort Pierce v. Cooper*, 190 So. 2d 12 (Fla. 4th DCA 1966).  And one such duty of sheriffs' deputies is to be "conservators of the peace in their counties." Fla. Stat. § 30.15 (1)(e).  As explained above, Kinney pushed Pinto to separate him from Buro after witnessing a verbal altercation and physical contact between the men

\*    \*    \*

For the reasons stated, the district court properly granted summary judgment to Kinney and Maholtz.

**AFFIRMED.**

---

outside a crowded nightclub.  This force was therefore "reasonable" and not "clearly excessive."  *Sanders*,  672 So.2d at 47.